### HAGER *vs.* THOMSON ET AL.

1. If one of the stockholders of a corporation agrees to sell out his shares to the others for such price as a fair examination into the condition of the company may show the stock to be worth, he is entitled to have the investigation which he has bargained for.

2. If any fraud or deception is practised upon the stockholder which induces him to transfer his shares for less than they are worth, he may be relieved in a court of equity.

3. But the burden of proving the charge of fraud is upon him who makes it, since fraud cannot be presumed in a court of equity any more than in a court of law.

4. Where an account is settled by parties themselves, and where there is no unfairness, and where all the facts are equally well known to both sides, their adjustment is final and conclusive.

5. Where the case is between vendor and vendee, the rights of the parties must be measured by the terms of the agreement under which the sale and purchase were made.

John D. Hager brought his bill in the Circuit Court for the district of New Jersey against John R. Thomson, Edwin A. Stevens, James Neilson, and the said John R. Thomson, Edwin A. Stevens, James Neilson, Robert F. Stockton and Richard Stockton, trustees of the New Brunswick Steamboat and Canal Transportation Company. The material averments of the bill are substantially as follows:

The complainant was the owner of seven and two-thirds shares of the capital stock of the New Brunswick Steamboat and Canal Transportation Company, a corporation of the State of New Jersey, created by law in the year 1831; and as a stockholder in the corporation he filed his bill in the Court of Chancery of the State of New Jersey against Thomson, Stevens and Neilson, three of the present defendants, charging them with divers breaches of trust and frauds in the management of the company's business, and praying for an account and other relief. The bill was answered and a replication filed. But before all the witnesses were examined the defendants

proposed to compromise, and it was agreed through R. F. Stockton, who was the agent of the company and of the defendants, that the suit should be settled. At that time the defendant was the owner not only of the seven and two-thirds shares of stock which he had had from the beginning of the company's existence, but of one third of four other shares which he had purchased after the commencement of the suit. The company, from the time of its organization in 1831, had been engaged in transporting passengers and freight between New Brunswick and New York, and in the year 1835 carried goods, coal, &c., between New York and Philadelphia by way of the Camden and Amboy railroad and the Delaware and Raritan canal. Abraham S. Nelson, of New Brunswick, was the treasurer, but kept no account of any business except that which was done by the company between New Brunswick and New York. The defendants, after the bill was filed in the Chancery Court of New Jersey, presented an abstract account of the business of the company, which they represented as containing a true and just account of all the business of the company, its receipts and expenditures. The complainant with his counsel attended at the office of the treasurer, Mr. Nelson, at New Brunswick, and examined certain books of account for about six hours without being able to ascertain the correctness of the abstract. The original books of entry were not present. The company have a set of books kept in Philadelphia by one Gatzner and others, and another in New York, kept by one Anderson, from which, and from the manifests, way-bills, receipts and vouchers, the monthly and other settlements were made out and carried to the books kept by Gatzner in Philadelphia. No books except those of Anderson were submitted to the complainant, and they were false, fraudulent, and intended to deceive the stockholders. R. F. Stockton, on the 2d of September, 1847, agreed with the complainant that the company and the defendants in the Chancery suit should purchase the complainant's stock for such price as, upon a fair examination of the assets, it should be found that the stock was worth, and on the 13th of January, 1848, Mr. Stockton met the complainant at Princeton Basin to carry out the

agreement of compromise, Anderson and Gatzner being pres-
ent. The partial examination by the complainant of Ander-
son's books, and the assurances of Stockton, Anderson, and
Gatzner, induced the complainant to believe that the abstract
from the books of Anderson was correct, and contained a fair
statement and just and honest account of the receipts and dis-
bursements of the company. But the books of the company
kept in Philadelphia were not produced, nor did the complain-
ant know at that time that there were any such books, or in
what manner the books kept by Anderson were made up.
He assumed that the abstract was right and did not question
its correctness, because he believed at the time that he was
dealing with men of integrity. Acting upon this belief, he
agreed that the balance of profits (forty-two thousand one
hundred and fifty-six dollars and sixty cents) was the correct
balance. A valuation was then agreed upon by the complain-
ant and Stockton of the property, real and personal, belonging
to the corporation, which being added to the net earnings,
made the assets about two hundred and eighty-nine thousand
dollars. The complainant's proportion or part of the last
mentioned sum was paid to him, and he transferred his stock to
the company. After this compromise was made the complain-
ant discovered that the abstract account upon which he had
based his agreement was false and fraudulent in a great many
particulars. The bill set forth specifically the false credits and
fraudulent charges, and prays that a just and accurate account
be taken of the company's business, profits and property, and
the defendants decreed to pay him such additional sum as it
shall be ascertained that his stock was worth.

The answer denies the allegation that there was any impor-
tant error in the accounts or abstracts of accounts or books
submitted to the complainant, or that any assurance was falsely
given by the defendants of their correctness, or that there was
any fraudulent or deceptive means used to procure the plain-
tiff's assent to the compromise.

The statements in the answer do not materially vary from that
contained in the bill concerning the terms and conditions upon
which the purchase of the complainant's stock was made by

R. F. Stockton for the company. The contract was that the complainant should be paid such price as, upon a fair examination into the condition of the company, it might be found to be worth.

A large number of witnesses were called—more than twenty; but their testimony needs not to be stated here, since the effect of it upon the case can be seen in the opinion of Mr. Justice Clifford.

The Circuit Court dismissed the bill, and the complainant took an appeal to this court.

*Mr. Ransom,* of New Jersey, for the appellant. The complainant is entitled to have from the defendants such a sum of money for his stock as, upon a fair examination of the affairs of the company, and a proper estimate of its assets, the stock may be found to be worth; and if the examination at Princeton was not a fair one, he is entitled to a restatement. The account taken at Princeton is not conclusive. *Perkins* vs. *Hart, Executor,* (11 Wheat., 256;) S. C., 6 Curtis, 587; *Chappedelaine et al.* vs. *Dechenaux, Executor,* (4 Cranch, 306;) S. C., 2 Curtis, 114; 1 Bald. C. C. R., 418; *Kelsey* vs. *Hobley,* (16 Pet. R., 269.)

If the assurances given by the defendants to the complainant, that the books were correct and the abstract true, were false, then those assurances were a fraud upon the complainant, which vitiates the account rendered, and entitles him to a new account and a new valuation of his stock. 1 Story's Eq. Juris., § 200; *Atwood* vs. *Small,* (6 Clark & Finnelly's R., 232, 233;) *Camp* vs. *Pulver,* (5 Barb. Sup. Ct. R., 91;) *Sandford* vs. *Handy,* (23 Wend. R., 260;) *Wilson* vs. *Force,* (6 Johns. R., 111;) *Snyder* vs. *Finley,* (Coxe, 78;) *Gilbert* vs. *Hoffman,* (2 Watts, 66;) *Hazard* vs. *Irwin,* (18 Pick., 95;) *Rodgers, Executor,* vs. *Grundy,* (3 Pet. R., 210;) *Smith* vs. *Richards,* (13 Pet. R., 26.)

Another reason is, the defendants stood in the relation of trustees to the complainant and the other stockholders of the company, and being in possession of full and perfect information concerning its affairs, they took advantage of the superior knowledge which their position gave them to purchase the stock of the complainant for less than its real value, withhold-

ing from him the information to which he was entitled. In such cases the court will carefully inquire into and sift all the circumstances in order to ascertain the perfect fairness and propriety of the transaction, and if any unfair advantage has been taken by withholding information or other fraudulent dealing, the purchase will at once be set aside. Hill on Trustees, 537; 9 Ves., 246–7; *Morse* vs. *Royal*, (12 Ves.. 373;) *Ayliff* vs. *Murray*, (2 Atk., 59;) *Boyd* vs. *Hawkins*, (2 Dev. Eq., 195, 329;) *Schwartz* vs. *Wendell*, (Walker's Ch., 627;) *Farr* vs. *Farr*, (1 Hill's Eq., 390;) *Stewart* vs. *Kissam*,. (2 Barb. S. C., 494;) *Allen* vs. *Bryant*, (7 Ired. Eq., 276;) *Hunter* vs. *Atkins*, (3 M. & H., 135;) *Herne* vs. *Mars*, (1 Vern., 465 ;) *Fox* vs. *Macreth*, (2 Brown's Ch.. Cas., 400;) *Scott* vs. *Davis*, (Mylne & Craig's R., 87 ;) *Freeman* vs. *Brooks*, (9 Pick., 212.)

*Mr. Bradley*, of New Jersey, for the appellees. Even if the charges of error were not shown to be unfounded, or satisfactorily explained, they should be deemed settled by reason of the sale of the plaintiff's stock to the company on the 13th of January, 1848.

The plaintiff had already filed a bill against the defendants Stevens, Thomson and Neilson, charging that the defendants had never accounted for the earnings of the company in its various branches of business, and that the books showing these transactions were kept by and in the hands of the New York and Philadelphia agents, Anderson, Decker, Gatzner, Freeman, A. S. Nelson, &c., and would show the results of the business. The bill was fully answered, issue joined, testimony taken, and the books of the company exhibited before a master and examined by the complainant and his counsel. After the parties were thus at arms' length, a proposition was made to compromise by the purchase of the complainant's stock at what it appeared to be worth by examining the books and appraising the property. The proposition was agreed to and carried out at Princeton. The books were produced and examined as fully as the plaintiff chose. He asked for no others.

A mistake was made at this appraisement, it is true, but it was in favor of the complainant, the valuation of the property

being fifty thousand dollars too high. The complainant re-fused to correct it, saying it was too late to correct errors. He took his own course to get at the value of the stock. He was not misled; he was on his guard. He had already charged the defendants with misleading him. Such a settlement will not be disturbed without the clearest evidence of fraud on its face. *Stearns* vs. *Page*, (7 Howard, 819;) *Baker* vs. *Biddle*, (Baldwin's C. C. R., 418;) *Drew* vs. *Power*, (1 Schoale & Le-froy, 182;) *Johnson* vs. *Curtis*, (3 Brown's Ch. C., 266;) *Wilde* vs. *Jenkins*, (4 Paige, 481;) *Lockwood* vs. *Thorne*, (1 Kernan, 170;) *Phillips* vs. *Belden*, (2 Edw. Ch. Rep., 1;) *Chappedelaine* vs. *Dechenaux*, (4 Cranch, 306;) Story's Eq. Jurisprud., § 523–529; Beame's Pleas, 227; *Small* vs. *Boudinot*, (1 Stockton, 381.)

Officers and agents of a body corporate cannot be sued by individual corporators, except in cases of fraud, and where no other remedy can be had. Angell & Ames on Corp., 6th ed., sec. 312; *Bayless* vs. *Orme et al.*, (1 Freeman, Miss., 175;) *Hersey* vs. *Veazie*, (11 Shepley R., 9, 12;) *Hodges* vs. *New Eng. Screw Co. et al.*, (1 R. Isl. R., 312;) *Smith* vs. *Hurd et al.*, (12 Metc. R., 371;) *Abbot* vs. *Merriam*, (8 Cushing's R., 588, 590;) *Robinson* vs. *Smith*, (3 Paige, 222;) *Austin* vs. *Daniels*, (4 Denio, 301;) *Mozley* vs. *Alston*, (1 Phillips, 790;) *Brown* vs. *Van Dyke*, (4 Halst. N. J. Ch. R., 795;) *Smith* vs. *Poor*, (40 Maine R., 415;) *Forbes* vs. *Whitlock*, (3 Edw. Ch. R., 446.)

Mr. Justice CLIFFORD. This was a bill in equity, and the case comes before the court on appeal from a decree of the Circuit Court of the United States for the district of New Jersey, dismissing the bill of complaint. It was filed on the eighteenth day of May, 1852, and was brought by the appellant.

Some brief reference to the introductory allegations of the bill of complaint, and to the transactions out of which the con troversy has arisen, is indispensable, in order that the founda tion of the claim made by the complainant may be fully under-stood.

It appears that the New Brunswick Steamboat and Canal Transportation Company, usually called the New Brunswick Company, was incorporated on the eighteenth day of January,

1831, and that the charter expired, by its own limitation, on the eighteenth day of January, 1852. Shortly after the charter was granted the company was duly organized, with a capital of twenty-five thousand dollars. Seven and two-thirds shares of the stock were taken by the appellant, and he was elected secretary of the company. They purchased a steamboat in 1831, which was employed in the transportation business between New Brunswick and the city of New York; and they also purchased a sloop, which was employed in carrying wood for the steamboat, and was also engaged in the transportation of merchandise on the Raritan river.

Two other companies were also created by the legislature of the State of New Jersey, and authorized to engage in the transportation business. One was called the Delaware and Raritan Canal Company, incorporated in 1830; and the other the Camden and Amboy Railroad Company, incorporated contemporaneously with the New Brunswick Company. Those companies were united in 1831, and were subsequently known as the joint companies. Most or all of the respondents were largely interested in those companies, and in 1834 they purchased about four-fifths of the stock of the New Brunswick Company; but the complainant still retained his shares and his position as secretary of the company and clerk on the steamboat. Whatever might have been the object of the purchasers, it is evident that the transfer of the shares had the effect to impart new energy and efficiency to the management of the company, for they increased the capital stock to fifty thousand dollars, making the par value of the shares two hundred and fifty dollars; and, during the early part of the year 1835, made an arrangement with the joint companies for transporting freight through the canal and over the railroad between New York and Philadelphia, and other intermediate places on the route. Under this arrangement they also built and procured canal boats and barges, and ran them on the Delaware and Raritan rivers and through Staten Island sound to the city of New York, operating them by means of steam-tugs furnished by the joint companies. They also did a large business on the Camden and Amboy railroad, using the locomotives, cars, and

steamboats of the railroad company for that purpose. Through-out this period they also continued to operate their steamboat line between New Brunswick and New York; and in 1837 they engaged in the coal business, purchasing and transporting coal to market, as is more fully set forth in the pleadings. Large profits were made by the company under these various arrangements; but they also incurred very large expenses, and the complainant became dissatisfied with the management of the company. Failing to get any redress for his supposed grievances, he, on the twenty-fifth day of March, 1847, filed a bill in equity in the chancery court of the State against three of the present respondents, charging them, as directors of the company, with divers frauds and breaches of trust in the man-agement of its affairs, and praying for an account of all the business of the company. To that bill of complaint the re-spondents in the suit made answer, denying the charges, and exhibiting what they alleged to be the actual circumstances of the case. Pending that suit, the complainant, with two other persons, purchased four additional shares of the stock of the company, and the same were held in the name of one of those persons for the equal benefit of the purchasers at the time the suit was brought.

With these explanations as to the origin of this controversy, we will proceed to state the foundation of the claim made by the complainant. Among other things, he alleged, that after he had proceeded to take testimony in that suit in support of his bill of complaint, propositions of compromise were made in behalf of the defendants, and that the propositions so made were entertained by him in the spirit of conciliation. Those propositions of compromise, he alleged, were made to him through R. F. Stockton, one of the respondents in this suit, who was the agent of the company and of these respondents; and he also alleged, that it was agreed and arranged that the suit should be compromised and settled in the manner and upon the basis set forth in the present bill of complaint. Both parties agree that the suit was settled in consequence of that arrange-ment, and that the stock of the complainant, including the four shares purchased during the pendency of that suit, was trans-

ferred to the company; but they differ, in some respects, as to the terms of the agreement providing for the transfer, and still more widely as to the circumstances under which the transfer was made.

As alleged in the bill of complaint, R. F. Stockton applied to the complainant, about the second day of September, 1847, to ascertain whether there could not be an amicable settlement of the matters involved in that suit, and that the conference resulted in an agreement that the company and the defendants in that suit should purchase his stock in the company, and pay him therefor such price or sum as, upon a fair examination of the affairs of the company, and a proper and fair estimate of the money, property, and assets of the company, the stock should be found to be worth. Having set forth the supposed agreement, the complainant proceeded to allege that he and R. F. Stockton, accordingly, met at Princeton, on the thirteenth day of January, 1848, to carry out and complete the same, for the sale and purchase of the stock; that from a partial examination of the books kept by the treasurer, and from assurances there given by R. F. Stockton and others that a certain abstract account there exhibited, and which was taken from the books, was correct, and contained a fair statement of the business of the company, and of the moneys received and of the disbursements made, and not knowing that there were other books of the company not produced at the time the abstract was prepared, he was induced to believe that the account was true and correct, and consequently did, upon the payment of his proportionate part of two hundred and eighty-nine thousand dollars, transfer the stock owned by him, including the four shares purchased during the pendency of the suit, to the company, and received pay for the same from the company's funds. But he alleged that he had since discovered that the abstract account was false and fraudulent in very many particulars, as specified in the bill of complaint; and, therefore, insists that he is entitled to have the settlement corrected and reformed, and to have an account taken of the entire property and estate of the company, and to be paid such additional sum for his stock as the same, upon such accounting, be found

to have been worth. On the other hand, the respondents, in their answer, admitted that they, by virtue of their being the last president and directors of the company, became and were the trustees of the corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property of the company among the stockholders, after paying the debts due and owing from the corporation; but they allege that the agreement was, that the complainant should sell the stock, held and represented by him, at such price as the same should be found to be worth, upon a fair valuation of the property of the company, and that the complainant, if he desired it, should have an opportunity of examining the company's books to satisfy himself of their correctness. Substantially adopting the language of the bill of complaint, they admitted that the complainant and R. F. Stockton met at Princeton, on the thirteenth day of January, 1848, to make a valuation of the property, and carry out the agreement; but aver that the counsel of the complainant and the defendants in that suit were present, as well as several other directors, and the treasurer and clerk of the company. According to the answer, all those persons, with others connected with the company, were present to aid and assist in making the valuation and statement of the property, and in such examination of the books of the company as the complainant or his counsel might desire to make. In this connection, they also allege that the books of the company were produced at the meeting and were examined by the complainant and his counsel as fully and for such length of time as they desired; and that all such explanations of the same as the complainant or his counsel required were fully and freely given by the persons present, who were the persons best qualified to make such explanations. It was at that meeting that the valuation was made; and the respondents alleged that all of the property of the company, according to the best of their judgment, information, and belief, was fairly and liberally appraised, and to the satisfaction of the complainant; and they also alleged, that he finally agreed that the settlement should be made on the basis that the books were correct as they stood on the

second day of April, 1847, when the abstract exhibit was made
out, without taking into the account any subsequent transac-
tions.   One matter only, and that not now in dispute, was left
in doubt, and provision was made for its satisfactory adjust-
ment.   Assuming the abstract to be correct, it showed a bal-
ance in favor of the company of forty-two thousand one hun-
dred and fifty-six dollars and sixty cents.   That sum, added
to the appraised value of the property, ought to have been
taken, as the respondents alleged, as the true value of the
capital stock of the company ; but they alleged that, at the
suggestion of the complainant, and by mistake on their part,
the sum of fifty thousand dollars, being the whole amount of
the original capital, was added to that amount as the basis of
the settlement, making the sum of two hundred and eighty-
nine thousand dollars, as alleged in the bill of complaint.
Pursuant to that settlement, the company paid to the com-
plainant one thousand four hundred and forty-five dollars for
each share, paying therefor, as they alleged, two hundred and
fifty dollars on each share more than they ought to have paid
according to the terms of the agreement; and they denied that
there was any fraud or deception practised by them or their
agents in any part of the transaction.   Some eighteen wit-
nesses were examined by the complainant in support of the
allegations of the bill of complaint, but the respondents took
no testimony; and, after a full hearing in the Circuit Court,
a decree was entered dismissing the bill of complaint.   1. It
is contended by the complainant, that the agreement obligated
the respondents to pay him such price for the stock he trans-
ferred to them as, upon a fair examination of the affairs of
the company, and a proper and fair estimate of the moneys,
property, and assets of the same, the stock was found to be
worth ; and if the examination of the books at Princeton was
not a fair examination of the affairs of the company, and the
estimate there made of the moneys, property, and assets of the
company was not a proper and fair estimate of the same, and
in consequence thereof he was induced to accept a less price
than the agreement authorized him to expect and demand,
then he is entitled to have an examination of the books and

the accounts, and to be paid such additional sum for his stock as it may be found to have been worth upon such restatement. Suppose the proposition to be correct as a general rule of law, still it remains to be ascertained whether the theory of fact on which it is based is sustained by the evidence. Undoubtedly, if there was any fraud or deception practised upon the complainant, as alleged in the bill of complaint, to induce him to transfer his stock for a less price than he was entitled to receive upon the reasonable fulfilment of the condition of sale to which he had agreed, and in consequence of such fraudulent acts or misrepresentations, he actually parted with the stock at less than its value on the basis of the agreement, then clearly he would be entitled to relief; but the burden of proving the charge of fraud is upon the complainant. Fraud cannot be presumed or inferred without proof in a court of equity, any more than in a court of law; and in both the rule is, that he who makes the charge must prove it; and there are some circumstances in this case, besides the fact that the charge is denied in the answer, that render the application of that rule peculiarly proper. As appears by the complainant's own showing in the present bill of complaint, he became dissatisfied with the manner in which the affairs of the company were conducted as early as the twenty-fifth day of March, 1847; and he accordingly alleges, that on that day he filed his bill in the Chancery Court of the State of New Jersey against three of the present respondents, charging them, as directors of the company, with divers frauds and breaches of trust in the management of its affairs. Answer was made to that suit by the respondents, and the complainant continued to prosecute it until the thirteenth day of January, 1848, when the settlement took place, and he transferred his stock. Most of the substantial matters now in controversy were more or less involved in that litigation; and, during the pendency of the suit, both the complainant and his counsel, on two or more occasions, were allowed to inspect the books of the company, and his own testimony shows that they examined them as fully and for such length of time as they desired. On one occasion the treasurer and book-keeper appeared before the master in

chancery, and, in obedience to a subpœna *duces tecum*, produced the books, and they were examined for several days. His own testimony also shows that he was present at the meeting of the stockholders on the third day of April, 1847, when the abstract in question was made; and several of his witnesses testify that the books were produced and submitted to the examination of the stockholders. No suggestion was made that any other books or vouchers, not produced, were necessary to a full exhibition and understanding of the affairs of the company; and none of the circumstances elicited on the various occasions, when the books were produced, afford any countenance whatever to the theory that any concealment, deception, or evasion was practised by the respondents. On the contrary, they furnish indubitable evidence that the complainant had every reasonable facility, and the most ample means, to ascertain the true state of the accounts. Whatever means of information the respondents had upon the subject appears to have been laid before the complainant, and surely he had no right to ask for more; and he is equally unfortunate, if the testimony adduced by him, as to what occurred at Princeton on the thirteenth day of January, 1848, be compared with the allegations of his bill of complaint. It was at that meeting, it will be remembered, that he accepted the propositions of compromise, and transferred his stock, and the witnesses substantially agree that the allegations of the answer are correct; that his counsel was present, and that he examined the books to his satisfaction, without even suggesting that any others were desired. Complaint is now made that the books of the agents in New York and Philadelphia were not produced on that occasion; but his own witnesses testify that he called for no others at the time; expressed himself as satisfied with the examination; and the bill of complaint admits that he agreed to the settlement, accepted the estimated price of his stock, and transferred it to the company.

Looking at the whole evidence, therefore, it is obvious that the charge of fraud and deception is wholly unsustained by proof, and we think the allegations of mistake, so far as the complainant is concerned, are equally unfounded. But it is

fully proved that a mistake in his favor was made in the basis of the settlement to the amount of fifty thousand dollars. That mistake, as appears by the evidence, was made by adding the capital stock to the estimated amount of all the moneys, property, and assets of the company, when, in point of fact, the whole of the capital stock had been expended in purchasing the property already included in the valuation. Before the consideration was paid for the stock the mistake was discovered, and the complainant was requested to consent to the correction by a corresponding reduction from the basis of the settlement, but he replied that it was too late to correct errors. That refusal is a circumstance of some significance, plainly indicating that the complainant did not then think it for his interest to rescind the contract, or that he had been circumvented by the respondents. He who seeks equity should do equity, is a maxim in equity jurisprudence, and we think that rule has some application to this case. 2. Numerous mistakes in the basis of the settlement are alleged in the bill of complaint, and some eighteen in number were urged upon the attention of the court at the argument by the counsel of the complainant. It was held by this court in a case between creditor and debtor that a settled account is only *prima facie* evidence of its correctness; that it may be impeached by proof of unfairness, or mistake in law or fact; and, if it be confined to particular items of account, it concludes nothing in relation to other items not stated in it. (*Perkins* vs. *Hart*, 11 Whea., 256.) Granting the correctness of that principle as applied to the case then before the court, still it is obvious that it cannot have any very direct application to the case under consideration. Much the largest number of controversies between business men are ultimately settled by the parties themselves; and when there is no unfairness, and all the facts are equally known to both sides, an adjustment by them is final and conclusive. Oftentimes a party may be willing to yield something for the sake of a settlement; and if he does so with a full knowledge of the circumstances, he cannot affirm the settlement, and afterwards maintain a suit for that which he voluntarily surrendered. But the present case is one between ven-

dor and vendee, and the rights of the parties must be measured by the terms of the agreement under which the sale and purchase were made. Assuming that the agreement was as is alleged in the bill of complaint, all the complainant could claim was such a price for his stock as, upon a fair examination of the affairs of the company and a proper and fair estimate of its moneys, property, and assets, the stock should be found to be worth. That examination into the affairs of the company was made by the parties to their satisfaction, and they also made the estimate; and there is no evidence of any unfairness, or that they committed any error, except the one already mentioned in favor of the complainant. On this point the complainant called and examined the agents of the railroad line, and the agents of the canal lines, and the agents of the coal barge lines, and they all testified, in substance and effect, that the accounts, or the results of the business, as ascertained by the monthly settlements, were correctly entered on the company's books. All of the accounts of the steamboat line were kept by the treasurer, and it has already appeared that those books were exhibited to the complainant at the time of his settlement. Nothing need be remarked respecting the steamtowing business, except to say that the matter was fully settled between the two companies in 1846, and the result of the settlement was duly entered on the books of the company. Without entering more into detail, suffice it to say that the gravamen of the bill of complaint is, that the complainant was induced to sell his stock for less than its worth; but he has not introduced one word of proof to sustain the allegation, and his own testimony shows that by mistake he received two hundred and fifty dollars on each share more than he was entitled to according to the agreement. In view of the whole case, we are of the opinion that the complainant has wholly failed to support the allegations of the bill of complaint, and the decree of the Circuit Court is accordingly affirmed, with costs.