## RAUH ET AL. *v.* WATERMAN ET AL.

[No. 3,356. Filed October 30, 1901. Transfer denied June 18, 1902.]

REPLEVIN.—*Defective Bond.*—A defect in an undertaking in a replevin proceeding in failing to provide, as required by §1290 Burns 1901, that plaintiffs will prosecute their action with effect, is cured by §1235 Burns 1901, which provides that no bond or written undertaking shall be void for want of substance or recital. *pp. 345, 346.*

TRIAL.—*Evidence.*—*Findings.*—In determining the weight of testimony, courts are permitted to draw reasonable inferences from the facts found. *p. 346.*

APPEAL AND ERROR.—*Failure to Assess Nominal Damages.*—The mere failure to assess nominal damages affords no ground for the reversal of the cause on appeal. *p. 347.*

SALES.—*Payment for Goods on Delivery.*—*Possession.*—*Title.*—Where goods are shipped under a contract that the purchase price is to be paid on delivery of the goods, the purchaser has no title to the goods and no right to the possession thereof until the purchase price is paid. *p. 347.*

SAME.—*Fraud.*—*Rescission.*—An agent sold five barrels of whisky to be paid for upon delivery. Upon learning that the whisky was at the depot the purchaser wrote to the principal stating that the goods were sold on four months' time, enclosing a memorandum purporting to be a copy of an agreement made with the agent to that effect. The principal answered that the salesman had reported the sale as cash, but, as there had been a misunderstanding, to settle it they were willing to make the terms four months, and directed the purchaser to receive the goods. *Held,* that the facts were sufficient to amount to fraud and authorize the recovery of the goods by the principal. *pp. 348–350.*

From Marion Superior Court; *Vinson Carter,* Judge.

Action by Leopold Rauh and others against Christian F. H. Waterman and others on a replevin bond. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*N. Morris* and *L. Newberger,* for appellants.

COMSTOCK, J.—On May 23, 1893, Joseph S. Finch & Co., merchants, replevied four barrels of whisky from the appellants and the Indianapolis Warehouse Company, and the same were delivered to them upon the execution of the

following undertaking: "We undertake to and with the defendants that the plaintiffs will return the property taken from them by virtue of the writ of replevin in the above entitled cause if a return thereof be adjudged by the court in said action, and that plaintiffs will pay to defendants all such sums of money as may be recovered against them in said action." Signed by appellee Christian F. H. Waterman, against whom this action is brought. On November 4, 1893, the replevin proceedings were dismissed by plaintiffs, but the whisky was not returned. This action is brought upon the undertaking signed by Waterman to recover from him the value of the whisky. There was an answer in two paragraphs, the first being a general denial. The second alleges that at the times mentioned in the complaint, Joseph S. Finch & Co. were the owners of and entitled to the whisky in question. At the request of appellees, the court made a special finding of facts and stated conclusions of law thereon, on which findings and conclusions of law judgment was rendered in favor of defendants, appellees here, for costs.

The errors assigned are that the court erred in its conclusions of law and in overruling appellants' motion for a new trial. The alleged breach of the undertaking is that the plaintiffs in said action of replevin dismissed the same without returning said property, or paying any sum of money realized from the sale of said property to these plaintiffs, or to any other of the defendants in said action. The special findings show that the action of replevin was dismissed by the plaintiffs therein, and costs therein fully paid by them, without prejudice, and without any trial of said cause upon the merits, and the title to, ownership, and right of possession of said four barrels of whisky was in no way determined in said cause.

The undertaking is defective in that it does not provide, as required by §1290 Burns 1901, §1270 Horner 1901, that the plaintiffs will prosecute their action with effect.

Section 1235 Burns 1901, §1221 Horner 1901, is intended to cure defects of the character here presented. It is as follows: "No official bond entered into by any officer, nor any bond, recognizance, or written undertaking taken by any officer in the discharge of the duties of his office, shall be void for want of form or substance or recital or condition, nor the principal or surety be discharged; but the principal and surety shall be bound by such bond, recognizance, or written undertaking to the full extent contemplated by the law requiring the same, and the sureties to the amount specified in the bond or recognizance. In all actions on a defective bond, recognizance or written undertaking, the plaintiff or relator may suggest the defect in his complaint, and recover to the same extent as if such bond, recognizance, or written undertaking were perfect in all respects."

Section 1290 Burns 1901, not only contemplates, but requires, that the party giving the bond shall obligate himself that the plaintiff will prosecute his action with effect. Appellants, plaintiffs below, as authorized by §1235, *supra,* suggest in their complaint the defect, so that the undertaking is to be considered as containing the stipulation to prosecute the action with effect. *Hawes* v. *Pritchard,* 71 Ind. 166, and authorities cited. When, therefore, plaintiffs dismissed their action, there was a breach of the bond for which the bondsman became liable. *Peffley* v. *Kenrick,* 4 Ind. App. 510, and authorities cited.

As to the reasons for a new trial, viz., that the decision is not sustained by sufficient evidence; is contrary to law; and that the part of the fifth section of the special finding of facts, finding fraud upon the part of Schwabacher, which misled the vendors of the whisky, is not sustained by sufficient evidence, we can not agree with the learned counsel for appellants. Courts are permitted, in determining the weight of testimony, to draw reasonable inferences from the facts found. The findings are sustained by sufficient

evidence. The findings hold that there was a breach of the bond in failing to prosecute the action of replevin with effect, yet, in view of the other findings of the court, appellants were entitled to nominal damages only by reason of such breach. A failure to assess nominal damages affords no ground for a reversal of a judgment in this court. *Smith v. Parker,* 148 Ind. 127, and authorities cited.

Judgment affirmed.

## ON PETITION FOR REHEARING.

ROBY, J.—Appellants' counsel argue in their brief upon the petition for a rehearing that the finding of the trial court, to the effect that the sale to Schwabacher was induced by fraud, is without support in the evidence. The facts are not in dispute. If they are such as to admit of the inference of fraud, the finding must stand. The argument is based upon the statement that the facts show a settlement of an existing controversy, and a sale of the goods thereafter uninfluenced by fraud. If the premise is granted, the conclusion is irresistible. Appellees' agent sold five barrels of whisky to Schwabacher, to be paid for upon delivery. Schwabacher had no title to the goods, and no right to the possession thereof without paying the price. *Curme* v. *Rauh,* 100 Ind. 247, 255. Upon learning that the whisky was at the depot at Indianapolis, to which place it was to be shipped, Schwabacher wrote appellees a letter as follows: "Indianapolis, Ind., March 15, 1893. Messrs. Jos. S. Finch & Co., Pittsburg, Pa. Gentlemen: I am in receipt invoice & B—L. 5 Bbls. G. W. Rye Spg. '90. The goods were bought on 4 mos. time & you mark bill cash. I will not receive the goods & they will remain at depot subject to your order until I can hear from you. Sorry there should be a misunderstanding on first order. Very truly yours, &c. Jos. Schwabacher. I inclose copy memorandum made with your agent. Memorandum Copy,

5 Bbls. 90 Finch Rye, Feb'y. $1.90, 4 mos. with labels for 25 cases free & 50c. per case (25) allowance for making boxes and labels."

It is specially found that the statements that said whisky was bought on four months' time, and that such memorandum had been made with the agent, were false and were made by Schwabacher with the fraudulent intent and purpose of deceiving Finch & Co., and inducing them to permit him to take the whisky from the depot without the immediate payment of its price. Immediately upon receipt of this letter, Finch & Co. answered that Lyons, their salesman, had reported the sale of the five barrels as cash, but, as there had been a misunderstanding, to settle it they were willing to make the terms four months, and directing Schwabacher to go ahead and receive the goods. Schwabacher, upon the receipt of such letter in due course of mail, got the whisky from the railroad company, and later mortgaged it to appellants to secure the payment of a preëxisting debt. The appellant does not, therefore, occupy the position of *bona fide* purchaser. *Boling* v. *Howell,* 93 Ind. 329, 331; *Hewitt* v. *Powers,* 84 Ind. 295. Appellees were at the time ignorant of the fact as to the terms of credit, except as the same was stated to them by the agent when the sale was made, and assented to the delivery of the goods on four months' time in order to compromise, as they believed, a genuine misunderstanding.

Fraud vitiates contracts. It is frequently, in case of sales, based upon the concealed insolvency of the purchaser and his intention not to pay. It does not follow, however, that such facts alone justify rescission and the recovery of goods. The remedy may be had whenever the contract is induced by fraud, without regard to what particular form it may assume, or what devices may have been followed in working it out. The representation as to the time of payment was a material one. The copy of an alleged memorandum made with appellees' agent went to the substance.

The appellees were led to believe that a misunderstanding existed, when in fact there was none, but, instead, a scheme to get the whisky without paying the money for it. It is true that the misstatement of facts equally within the knowledge of the parties does not constitute actionable fraud. It is also true as a general proposition that notice to an agent is notice to his principal. Neither of these propositions are applicable to the facts of this case. Appellees were merchants at Pittsburg, Pennsylvania. Schwabacher was a wholesale dealer at Indianapolis. Lyons was a traveling salesman in the employment of appellee, and on February 4, 1893, made the sale to Schwabacher of the whisky before referred to, and immediately forwarded the order to his firm who shipped the goods, and sent the consignee a bill of lading marked "cash." On the evening of the same day that the sale was made, Lyons left Indianapolis on a trip through the western portion of the United States going to San Francisco, California, and, in going and returning, stopped at various cities and towns for the purpose of selling goods, and returned to Pittsburg about the first of April. A necessary element in the deception of appellees was found in the absence of their agent. Under such circumstances, the further proposition that one guilty of fraud can not complain because his statements were credited, becomes applicable. Schwabacher represented by the copy of the alleged memorandum that the agent had agreed to four months' time. Of this representation the agent had no knowledge. The evidence thus presented to appellees appeared to show conclusively that the report made to them by their salesman was erroneous. The letter was adroitly worded, and well calculated not only to deceive appellees as to the main fact, but to prevent them from investigating as they could have done without delay had the salesman returned to Pittsburg. Under such circumstances they had a perfect right to take Schwabacher at his word.

Rauh *v.* Waterman.

The question as to how far and when one party may rely upon the assertions of the other has been much considered in a variety of cases. The logical and just test is found in the standard of a reasonable man's action under the same conditions, modified, of course, by particular facts rendering the defrauded person unable to use such degree of care for his own protection. The decisions can be harmonized by the application of this rule. The varying facts upon which they rest make a general rule necessary to their correct understanding. A reasonable man might well rely upon such statements made under such circumstances as those established herein. Many authorities are cited to the effect that where, with full knowledge, the settlement of an existing controversy is made, which involves and depends upon the assertion of a false claim by one party, and in which such claim is reiterated, that the settlement is final. The proposition and the authorities do not apply to a case in which the settlement is obtained by means of the concealment of the fraud and by inducing the belief in the existence of a wholly different state of facts. A settlement made with full knowledge, and a settlement induced as this one was, are two different things. No question of fraud was involved in the settlement made, but the settlement of an alleged misunderstanding was one step in working out the fraud itself.

The petition for the rehearing is overruled.

Comstock, C. J., Black, Henley, and Robinson, JJ., concur.

## DISSENTING OPINION.

WILEY, J.—Upon the original hearing I concurred with my associates in the second division in the opinion affirming the judgment. On the petition for rehearing, I have had occasion more carefully to reëxamine the questions presented by the record, and have reached the conclusion that the judgment should be reversed. This has necessitated a

consideration of the case by the full bench, and as my associates are of the opinion that the conclusion originally reached is correct, and hence that the petition for a rehearing should be overruled, I will take this occasion to express my reasons why the judgment below should be reversed.

Appellee has not filed any brief in support of the judgment. This itself, under the recent holding of the Supreme Court, is sufficient reason for a reversal. *Neu* v. *Town of Bourbon*, 157 Ind. 476; *Berkshire* v. *Caley*, 157 Ind. 1. But in my judgment the facts disclosed by the record do not support the judgment in favor of appellee. It is clear that appellees' defense rested upon the sole ground that by the letter of Schwabacher it was claimed that the sale of the whisky to him by Finch & Co. was upon a credit of four months, when in fact the sale was for cash. From this it is evident that the whole controversy had reference to the terms of the contract of sale, and not to outside facts furnishing the inducement to the contract.

The point in controversy between Finch & Co. and Schwabacher was as to the terms of the sale. The former represented through their agent who sold the whisky, that the sale was for cash, while the latter claimed it was on a credit of four months. Schwabacher was fortified by a memorandum, made at the time of the sale, showing that it was on a credit of four months, but this memorandum was not signed by either party. The contract of sale, therefore, was within the statute of frauds, and not binding; for it was for goods of the value of more than $50, and not in writing. §6635 Burns 1901. Schwabacher had a right to repudiate the contract, refuse to accept or receive the goods, and, if he had, he would have been freed from liability. The pivotal questions in the case, it seems to me, arise upon the correspondence between the parties after the whisky had been shipped to Schwabacher, and he had received a bill showing that the sale was for cash. He at once informed the sellers that the sale was to be on a credit

of four months, that he would not receive the goods on the terms indicated by them, and that the goods were subject to their order. In response to this communication Finch & Co. wrote Schwabacher, informing him that their agent had reported the sale for cash, but, for the purpose of settling the misunderstanding, they were willing to make the terms four months, and requested him to receive the goods, which he did.

So we are confronted with the plain proposition that in order to settle a misunderstanding between Finch & Co., the sellers, and Schwabacher the purchaser, it was agreed that the latter should have a credit of four months. It was not a misunderstanding or dispute as to any outside or extraneous facts influencing the transaction, but merely as to the terms of the contract, and as to this, both parties are supposed to have been fully and equally informed. By mutual agreement the dispute between them was settled, and the terms fully agreed upon. Finch & Co., through their agent, whose knowledge is imputed to them, knew just what the contract was. Schwabacher had like knowledge, and neither of the parties to the contract were bound by it. There was no binding contract between the parties until the one was made by the correspondence between them. If Finch & Co., upon receipt of the letter from Schwabacher informing them that the sale was on a credit of four months, had not desired to close the transaction upon such terms, a speedy determination of the dispute between them could have been made by ordering the goods reshipped to them. But this they did not do, but proposed to settle the misunderstanding between them upon the exact terms claimed by Schwabacher.

It is worthy of remark that the record does not disclose any representations by Schwabacher, such as usually appear where contracts for the sale of goods are rescinded and the property sought to be recovered. He made no representations as to his solvency. He did not make any

property statement, upon which he asked credit, neither is there any evidence or finding that he was insolvent. So far as this record shows, he was at the time of the transaction, and has ever since been, amply able to pay his debts. True, fraud vitiates all contracts, and where goods or merchandise are sold, and the sale is induced by fraudulent representations material to the contract, as to the falsity of which the seller was ignorant, and upon which he had a right to rely, the seller may rescind the contract and recover the property. On the contrary, however, by the most diligent search, I have been unable to find any case in which a recovery has been allowed where there was no representations inducing a contract for the sale of goods, but where the dispute between the parties was, as here, merely with respect to the terms of the contract.

Counsel for appellants, in their brief, use very strong and pertinent language in discussing this point as follows: "If the contention of one side as to the terms of a contract could be made the basis for the undoing of the settlement made, what value would a settlement be in any case? Necessarily, in all disputes one side is right and the other is wrong. In all disputes one side inevitably claims that the other is wrong. If the adjustment reached does not settle the contention of each as to the terms of the contract as claimed by the other, then it settles nothing, for there is nothing else to settle. To illustrate: A suit is brought on a parol contract, as claimed by the plaintiff. The defendant answers, setting up an entirely different contract, which he alleges was the agreement entered into. Both statements can not be true. Thereupon, as in the present case, in order to settle the controversy or misunderstanding the claims made by the one side or the other, in whole or in part, are allowed, or perhaps new terms agreed upon. But whatever be the conclusion reached, the truthfulness or falsity of the claims made by each are abandoned, and

the whole transaction merged in the terms of the settlement. Is it competent thereafter for either party to undue the settlement at will, and retry the original controversy? For that is what results whenever an issue is allowed as to the truthfulness of the defendant's original claim. It has always been our understanding that a compromise of a controversy out of court, without evidence, is equivalent to an adjudication in the court upon evidence, and where there is a compromise of a matter in dispute out of court, it is not competent for either party thereafter to reopen the transaction simply because he had the preponderance to maintain the original proposition. By the settlement all questions of right with respect to the real terms of the contract have been waived. In the present case it does not matter whether the goods were sold for cash or on four months' time; it does not matter whether the controversy was resolved in favor of the contention of Schwabacher or Finch; and it is equally insignificant whether Schwabacher claimed the credit was four months or eight months, or whether upon a trial of the issues the proof would have shown the one period or the other, or a cash transaction. By the result reached the parties waived the issue of fact. They settled the controversy. Their minds met upon the proposition to deliver the goods to Schwabacher on a credit of four months. He accepted them upon these terms. In this transaction there was settled nothing except the terms of the contract, and there was nothing else to settle, because he made no representations respecting his standing or credit; and there is no evidence in the present case that, in making the purchase, he had any other intention except to pay for the goods after the credit agreed upon had expired."

If there is a matter in dispute between two parties, and they reach an agreement determining such matter, it is certainly too late for the one who makes a concession to say or affirm that he was deceived by the very thing it was

agreed to settle. Schwabacher did not make any concession. He stood upon the contract as he understood it, and refused to accept the goods on the contract as Finch & Co. understood it. The latter thereupon conceded to Schwabacher the very thing for which he contended, and the matter in dispute was thereupon settled.

The case of *Adams* v. *Sage,* 28 N. Y. 103, is exactly in point. In that case, as in this, the information in regard to the terms of sale was conveyed to the principal by an agent who conducted the transaction. Upon the question in dispute between the parties a compromise was reached and a settlement had, and in an action to rescind the settlement the court said: "Indeed, upon such evidence, it would be error to submit to a jury the question whether reliance was or was not placed upon the reiterated false representations. Under the circumstances assumed, the law presumes that the party relied, in making the agreement, upon his own investigation, and not upon the representations of the party with whom he is dealing. This conduct, in acting in opposition to the knowledge acquired by inquiry from one who knows the facts, is attributable, and is set down by the law, to his own indiscretion and recklessness, and not to any fraud or surprise, of which, under the circumstances, he has any right to complain. Knowledge that the representations made in relation to the subject of an agreement, as an inducement to entering into it, are false, will deprive the party having such knowledge, of all title to relief in equity. (1 Story's Eq. Jurisp., §202.) And when a party has been defrauded, and with full knowledge of the fraud settles the matter in relation to which the fraud has been committed, he has no claim to relief at law or in equity on account of such fraud. * * * In 2 Parsons on Cont., 270, the rule is laid down in relation to defenses to actions on the ground of false representations, that it must appear that the injured party not only did, in fact rely upon the fraudulent statement, but had a right to rely

upon it, in the full belief of its truth, for otherwise it was his own fault or folly, and he can not ask of the law to relieve him. Many of the cases cited by the author to sustain this rule, hold that if the truth or falsehood of the representations might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglect to do so, and he is remediless.    *    *    *    Now it can not be that a settlement effected under the circumstances already stated, comes within the rule which annuls all instruments and agreements procured by fraud. Such an application of the rule would be a virtual prohibition against the compromise of frauds, or of actions for relief on account of frauds, unless the guilty party should make not only full retribution, but also full confession of his guilt. The law favors the compromise of doubtful and disputed claims, whether they arise *ex contractu* or *ex delicto*. Such compromises narrow the field of discord; they put an end to litigation and strife, and promote peace and good will. They are usually effected by mutual concessions and compromise. Neither party is compelled to yield more of his claim or defense than he sees fit or deems necessary to accomplish the settlement. If the subject of compromise is a fraud, the party aggrieved may magnify the enormity of it, and the party accused may assert his innocence. Where fraud has been committed by misrepresentations and false statements, and the aggrieved party, with knowledge of the facts constituting the fraud, makes a compromise of the matter without suit, or, after suit brought to redress the wrong, compromises such suit, the compromise should be held valid in law, although the party committing the fraud may reiterate such misrepresentations and false statements and reaffirm his integrity in the matter in order to effect the compromise, and the aggrieved party may thereby be induced to make the compromise."

If this case states a correct rule of law, then it settles this appeal in harmony with the contention of appellants.

In my judgment, the rule applicable to such cases, and facts analogous to the facts here, is correctly stated in the case from which I have quoted. I am unable to find any case declaring a different rule, while there are many in harmony with it. Of the many cases showing that compromises based upon disputed facts are held binding notwithstanding the merits of the original controversy, I cite the following: *Clarke* v. *White,* 12 Pet. 178, 9 L. Ed. 1046; *Hennessy* v. *Bacon,* 137 U. S. 78, 11 Sup. Ct. 17, 34 L. Ed. 605; *Graham* v. *Meyer,* 99 N. Y. 611, 1 N. E. 143; *McCoy* v. *Quigly,* 55 Iowa 315, 7 N. W. 633; *Massachusetts, etc., Ins. Co.* v. *Hayes,* 21 Ill. App. 258; *Ordway* v. *Continental Ins. Co.,* 35 Mo. App. 426; *Durkee* v. *Stringham,* 8 Wis. 1; *Mamlock* v. *Fairbanks,* 46 Wis. 415, 1 N. W. 167, 32 Am. Rep. 716.

There is an absolute failure of evidence upon which to base that part of finding number five, to the effect that the statement in the letter and memorandum of Schwabacher to Finch & Co. was fraudulent and intended to deceive the latter. If this judgment is upheld, we will have a case in our reports which asserts the anomalous doctrine that a party to a compromise and settlement can assail the same on the ground that a different result might have been reached upon the trial of the issue, raising such question, and also that there may be a rescission of a contract because of representations made to the seller by the purchaser, representing matters upon which he had no right to rely, and concerning which he was already fully informed.

Lyons, the agent and salesman of Finch & Co., knew the terms of the contract, and reported to his principals that the sale to Schwabacher was for cash. It follows that both the agent and principal knew the facts, and neither can plead ignorance. So it matters not whether the statement in Schwabacher's letter was true or false; he asserted it as a truth, and Finch & Co. accepted it as such, and upon that understanding the matter in controversy was settled. Here

we find Finch & Co. seeking relief from what they are pleased to call deception practiced upon them by Schwabacher, while at the same time we find them in the attitude of declaring that they had reliable information from their trusted agent that the statement of Schwabacher was false, or at least contrary to what he was claiming. Instead of standing upon the word of their agent, and maintaining that the sale was for cash, they preferred to compromise and settle the matter of difference between them and give a credit of four months. I have been unable to find any authority holding that under such facts the seller is entitled to any relief and I do not believe any can be found. When Lyons, Finch & Co.'s agent sent in the original order for the sale to Schwabacher, February 24th, he informed them that the sale was for cash. Notwithstanding this, for the purpose of settling the controversy, on the 16th of March following they agreed that Schwabacher should have a credit of four months, as he contended he was entitled to have under the contract. Lyons went West after making the sale to Schwabacher, and did not return until about April 1st. During all of that time he was in communication with his principals. On his return he reiterated his statement that the sale was to be for cash, and yet Finch & Co. did not move in the matter until May 23d, and not until they learned Schwabacher had mortgaged the goods to appellants.

The knowledge of the agent is the knowledge of the principal in a particular transaction as to all of its material parts. In this instance, however, Finch & Co. are chargeable with actual knowledge, for they had the letter of their agent advising them of the exact terms of the sale. To make the point more forcible, suppose that when Finch & Co. received the letter from Schwabacher insisting that the sale was on a credit of four months, Lyons, their agent, who negotiated the sale had been present, and had confirmed the information contained in his letter reporting the

sale; it would have added nothing to the information they had, for they had been fully informed that the sale was for cash, and they had no right to rely upon the statement of the adversary party. Notwithstanding this, with a full knowledge of the terms of the sale, on receipt of the letter from Schwabacher informing Finch & Co. that he would not receive the goods on the terms indicated, and that they would remain at the depot subject to their order, they unhesitatingly acceded to his claim that the goods were bought on four months' credit, not because they relied upon his statement, but because they preferred to sell and deliver the goods on four months' credit, rather than miss the sale and receive back the goods. If it be conceded that the original contract was for cash, Finch & Co. knew that it was not enforceable under the statute of frauds, and Schwabacher's relinquishment of all claim to the property abrogated the contract, and the compromise or settlement became a new contract. There can be no doubt but what Finch & Co. had a right to determine the question of credit, regardless of any act of their agent; and so in this case they extended a credit of four months without any representation by Schwabacher as to his financial condition, except that he claimed that under the original contract he was entitled to a credit of four months, and that if such credit was not granted he would not receive the goods.

There are three propositions which it seems to me effectually dispose of the case before us in favor of appellants: (1) That the knowledge of the agent is the knowledge of the principal. 1 Am. & Eng. Ency. of Law (2d ed.), 1144-1150, and authorities there cited. (2) That actionable misrepresentation must be concerning material facts, and not concerning matters equally within the knowledge of both parties. *Slaughter* v. *Gerson*, 13 Wall. 379, 20 L. Ed. 627; *Farnsworth* v. *Duffner*, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931; *Richardson* v. *Walton*, 49 Fed. 888, 895; *Long* v. *Warren*, 68 N. Y. 426; *Brown* v. *Leach*, 107

Mass. 364; *Parker* v. *Moulton,* 114 Mass. 99, 19 Am. Rep. 315; *Poland* v. *Brownell,* 131 Mass. 138, 41 Am. Rep. 215; *Burden* v. *Burden,* 141 Ind. 471; *Kain* v. *Rinker,* 1 Ind. App. 86; *Lincoln* v. *Ragsdale,* 9 Ind. App. 555; *Anderson, etc., Works* v. *Myers,* 15 Ind. App. 385. (3) That it must appear that the party relying upon the misrepresentations could not or did not know the falsity thereof, and, if in doubt, it was their duty to make reasonable inquiry. *Hager* v. *Thomson,* 1 Black 80, 17 L. Ed. 41; *Cleveland* v. *Richardson,* 132 U. S. 318, 10 Sup. Ct. 100, 33 L. Ed. 384.

In *Burden* v. *Burden, supra,* the Supreme Court, by Jordon, J., said: "Misrepresentations must be concerning a material fact, and not concerning matters equally within the knowledge of both parties, and it must appear that the party relying upon the same could not, or did not, know the falsity thereof." In *Anderson, etc., Works* v. *Myers, supra,* this court, by Lotz, J., said: "If a party blindly trusts where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies *volenti non fit injuria."* In *Lincoln* v. *Ragsdale, supra,* at 557, Judge Ross, speaking for the court, said: "However false the representations made by the appellant, if known by appellee to be false, he was not misled thereby."

In *Slaughter* v. *Gerson,* 13 Wall. 379, 383, 20 L. Ed. 627, Mr. Justice Field, speaking for the court, said: "The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied and by which he was actually mislead to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where

the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations."

In *Clarke* v. *White,* 12 Pet. 178, 198, 9 L. Ed. 1046, it was said: "He who purchases unsound property, with the knowledge of the unsoundness at the time, can not maintain an action. So, that if one compounds a debt, or makes any other contract, with a full knowledge of the facts, acting at arm's length, upon his judgment, and fails to guard against loss, he must abide the consequences. Neither fraud or mistake can be imputed to such an agreement."

In *Farnsworth* v, *Duffner,* 142 U. S. 43, 48, 12 Sup. Ct. 164, 35 L. Ed. 931, Mr. Justice Brewer, speaking for the court, said: "And in 2 Pomeroy's Eq. Jurisp., §892, it is declared that a party is not justified in relying upon representations made to him (1) when, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement; (2) when, having the opportunity of making such examination, he is charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence; (3) when the representation is concerning generalities equally within the knowledge or the means of acquiring knowledge possessed by both parties."

It follows therefore that though the trial court did find that Finch & Co. believed the statements made in Schwabacher's letter,—that the sale was made on credit and not for cash,—such finding can not avail against the plain rule of law stated in the cases I have cited. Here the parties were dealing with each other on an equal footing, and at arms length, and hence, under the authorities cited, Finch & Co. had no right to rely upon the statement of Schwabacher, because they were fully informed as to the terms

of the contract.    It can make no difference what might have been the conclusion of the court upon the trial of the issue as to the terms of the credit in the absence of an agreement between the parties.    There can be no question, under the authorities cited, that the settlement or compromise agreement was fairly made by persons dealing with each other upon terms of perfect equality, holding no relation of trust or confidence to each other, and each having equal knowledge of every fact bearing upon the question of the validity of their respective claims.    Under such facts the Supreme Court of the United States have said:    "Such a settlement ought not to be overthrown, even though the court should now be of the opinion that the party complaining of its surrendered rights which the law, if appealed to, would have sustained." *Hennessy* v. *Bacon,* 137 U. S. 78, 11 Sup. Ct. 17, 34 L. Ed. 605.

My deliberate judgment is that the settlement made between Finch & Co. and Schwabacher, upon the facts which are undisputed, irrespective of the previous contention of the parties, should be held inviolable.    This being true, the title to the goods in controversy vested in Schwabacher upon the settlement being made, and he had a right to mortgage them to appellants to secure the payments of *bona fide* indebtedness.

The petition for rehearing should be granted and the judgment reversed.