# Mobile County *v.* Williams, Judge.

*Assumpsit.*

(Decided April 17, 1913.  Rehearing denied May 8, 1913.
61 South. 963.)

1. *Words and Phrases; Void.*—A void thing is no thing. It has no legal effect whatever and no right can be obtained under it or grow out of it. In law it is the same thing as if the void thing had never existed.

2. *Officers; Fees; Right to.*—Under section 3693, an officer claiming fees must point out a definite law authorizing them, and such law cannot be extended beyond its letter, as the state may impose duties on public officers without providing compensation therefor.

3. *Same; Compensation.*—Persons accepting public office requiring the rendition of service take the office cum onere, and must render their service gratuitously unless compensation is fixed by express statutory provisions, and an express liability for payment imposed.

4. *Counties; Business and Governmental Agency.*—In one sense a county is a business corporation, and in that sense its officers and agents may legally bind it when acting within the authority conferred on them by law; in another sense it is a political subdivision of the state created in the aid of the administration of the state government and in this sense its officers are public officials whose acts are not merely voidable but void unless authorized.

5. *County Commissioners; Auditing Claims.*—In auditing and allowing claims against a county, its commissioners act in an administrative capacity only, and such allowance is only prima facie evidence either of the correctness of the claim, or of the county's liability to pay it, and if the claim is not properly chargeable to the

county, its allowance is void, and the county is not estopped to dispute the liability, or to recover the fund in case the claim has been paid.

6. *Same; Warrant; Illegal Allowance.*—Where illegal fees and compensation are allowed to a county official by its commissioners, the records of the commissioner's court will show that the order is void, and the warrant drawn pursuant thereto is also void, and can furnish protection to no one.

7. *Same; Treasurer; Illegal Payment.*—Where the records of the commissioners court of a county show that illegal fees have been allowed to a county officer, it becomes the duty of the county treasurer to refuse to pay a claim, and to make defense on behalf of the county, and if he pays it he does so at his peril.

8. *Same; County Officers; Liability for Illegal Fees.*—Where a county officer collects money from the county as fees for services rendered to which he was not legally entitled, the county is entitled to recover the money in a suit against such officer on his bond.

9. *Same; Color of Office.*—As used in section 1500, Code 1907, the words "color of office" means under the pretended authority of his office, guise, appearance, pretense, and such section is to be read into the official bond of the county officer so that when he receives fees illegally from the county for work done by him as an officer, he receives same under color of his office, and is liable therefor on his official bond, notwithstanding in collecting such fees, he acted in good faith under a mistake as to his rights.

10. *Same; Acceptance.*—Where a county officer receives illegal fees his act is wrongful, although not the result of a bad motive; the term "wrongful" meaning the invasion of a right to the damage of the party who suffers it, consisting of injury done without reference to the purpose or physical capacity of the person doing it. It may or may not have been done with a bad motive, the question of motive being usually one of aggravation only.

11. *Same.*—Payment of county funds to an officer for services rendered by him as such under legal requirement, and for which the law allows him no compensation, is illegal and is not the payment of a claim against the county in its corporate capacity within subdivision 3, section 3313, Code 1907.

12. *Same; Compromise.*—Subdivision 11, section 3313, Code 1907, relates to the illegal allowance of claims which the commissioners were not prohibited from allowing, and does not confer authority upon them to compromise a claim to recover fees and allowances illegally made to a county officer, which the commissioners were without jurisdiction or power to make.

13. *Statutes; Construction; Subsequent Codification.*—Subdivision 3, section 273, Code 1886, having been construed to cover all official bonds, including bonds of judges of probate, and having been sub-. sequently brought forward without change into the Code of 1907, as section 1500, constitued a legislative adoption of the prior construction.

(Mayfield, J., dissents.)

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by the County of Mobile against Price Williams, Jr., Judge, to collect moneys alleged to have been illegally paid him. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The facts sufficiently appear in the opinion. Plea 4 is as follows: "That each and all of the several claims, and demands set up in the complaint are parts of, and embrace in, a certain claim aggregating, to wit, $5,056.25, found and presented against the defendant, Price Williams, Jr., judge of probate of Mobile county, Ala., by the examiner of public accounts, for and on behalf of Mobile county, Ala.; that the said claim was made a few months prior to the 5th day of February, 1912; that the same consisted of amounts allowed to the said Price Williams, Jr., as judge of probate of said county, by the board of revenue and road commissioners of said county for furnishings for his office and for sundry services rendered by him; that of all said amounts aforesaid, under orders by the said board of revenue and road commissioners, less than $1,000 of said amounts were allowed and paid subsequent to the adoption of the Code of Alabama on, to wit, August 26, 1909; that on, to wit, the 5th day of February, 1912, the said Price Williams, Jr., judge of probate of Mobile county, presented to the said board of revenue and road commissioners of Mobile county, Ala., a proposition, a true copy of which is hereto attached, marked Exhibit A, and made a part hereof; that each and all of the demands presented and asserted in and by the complaint in this cause are parts of, and are embraced within, the claim on the part of the county of Mobile against the said Price Williams, Jr., set forth in the said proposition, a copy of which is Exhibit A hereto; that on, to

21—180

wit, the 2d day of April 1912, the said board of revenue and road commissioners, in meeting assembled, heard, considered, acted upon and accepted the said proposition, a true copy of the action of the said board on the aforesaid proposition, as revealed by the minutes of the said board, is hereto attached, marked Exhibit B, and made a part of this plea; and that by virtue of the matters and things aforesaid, all of which occurred before the bringing of this suit, the claims and demands sued upon in this cause were compromised and fully settled, and these defendants were released and discharged from all liability by reason thereof." Exhibit A to this plea is a petition addressed by Price Williams, Jr., judge of probate, to the board of commissioners, setting up that the matters charged to him by the examiners of public accounts, and stating that under a ruling of the Attorney General certain items were eliminated, leaving a certain amount as chargeable to the judge of probate, and that each item of said claim arises on account of and is based upon moneys paid to your petitioner in good faith, and received by him in good faith, by order of this honorable court, and that each item claimed is doubtful, whereupon, he offers a compromise. Exhibit B is the act of the board accepting the proposition after full consideration because of the fact that the claim is doubtful. The demurrers to the plea raise the questions decided in the opinion.

The following is plea 5: "That all of the several claims and demands set up in the complaint are based upon the following facts: During the period beginning with the first of the year 1906, and ending with the last of the year 1910 the defendant Williams from time to time made claims against the plaintiff for fees for services in insanity inquisition cases in which the defendant or insane party was a pauper adjudged insane;

[Mobile County v. Williams, Judge.]

that the aggregate of the amounts so claimed during
said period was $2,859.75; that during said period he
further made claim against the said county for the
sum of $343 for signing and sealing county bonds; that
during said period he further made claim against the
county for $573 for indexing the minutes of the board
of revenue and road commissioners of the said county;
that each and all of said claims were made out in writ-
ing as claims against the county and were duly and
fully itemized so as to show the exact services perform-
ed and were verified by the oath of the defendant Wil-
liams; that from time to time, and within 12 months
after they accrued, the said claims were filed with and
presented to the said board of revenue and road com-
missioners of Mobile county, Ala.; that the said board
in each instance knew and was fully informed of all
of the facts connected with and bearing upon the claim;
that each one of the said claims was allowed and passed
to payment by the said board of revenue and road com-
missioners and a warrant ordered issued therefor; that
all of these proceedings were duly entered upon the min-
utes of the said board and there appear; that all of the
said warrants therefor were paid to the said Williams
by the treasurer of the county within the period afore-
said; that the several demands and claims set forth in
the complaint in this case are all for money paid to and
received by the said Williams as aforesaid, although in
the complaint the amount so paid and received each
year is stated and claimed in a separate allegation of a
breach of the bond sued upon."

The demurrers raise the questions decided in the
opinion.

NORBORNE R. CLARK, Solicitor, and R. C. BRICKELL,
Attorney General, and W. L. MARTIN, Assistant Attor-

ney General, for appellant. The commissioners were without authority to settle and compromise any claim which the county held against the defendant. A county can contract and pay only such indebtedness as the law authorizes it to pay, and no officer can charge it with the payment of other claims, however meritorious the consideration or whatever may be the benefits the county may derive from it.—*Van Epps v. Commissioners Court*, 25 Ala. 460; *Mitchell v. Tallapoosa County*, 30 Ala. 130; *Barbour County v. Clark*, 50 Ala. 416; *Jack v. Moore*, 66 Ala. 187; *Naftel v. County of Montgomery*, 127 Ala. 563. The probate judge is liable on his bond for the claims here collected.—Sec. 1500, Code 1907; *Savage v. Matthews*, 98 Ala. 535; *Tallman v. Drake*, 116 Ala. 262; *Norton v. Kumpe*, 121 Ala. 446. The re-enactment of this section and of section 5415, Code 1907, is an adoption by the Legislature of the construction given the statute.—*U. S. F. & G. Co. v. U. T. & S. Co.*, 142 Ala. 532. That the county is such a person as is mentioned in the statute is beyond peradventure. Sec. 1, Code 1907; *Jackson County v. Derrick*, 117 Ala. 348; 69 N. W. 601.

STEVENS, LYONS & DEAN, for appellee. The collection of fees for services rendered by a county officer is an exercise of an individual or personal right, and in no sense an official duty, or act done under color of office, and hence, no action will lie against his bondsmen.—*Furlong v. State*, 58 Miss. 717; *Jennings v. Bobe*, 40 South. 194; 60 N. Y. 425; 41 Pac. 445; 72 Pac. 517; 41 N. E. 153; 76 N. W. 474; 77 N. E. 686. The examination, settlement and allowance of all claims against the county is expressly confided to the commissioners' courts or boards of revenue.—Subd. 3, sec. 3313, Code 1907. It is elementary that monies paid through an

error or mistake of law as distinguished from an error or mistake of fact cannot be recovered back.—17 N. Y. 247; 34 Pac. 585; 75 N. C. 215; 2 Denio. 36. If this proposition is sound, then the county cannot recover. The commissioners have power to compromise claims against the county other than as conferred by subdivision 11, section 3313.—*Com. Ct. v. Moore,* 53 Ala. 27.

DE GRAFFENRIED, J.—We do not, of course, ascribe bad faith to any of the officers of the county of Mobile in this discussion of the legal questions which are presented by this record. On the contrary, we are satisfied that the transaction was had without bad faith on the part of any of said officers. We think it probable that the transactions set up by the pleadings grew up out of a custom which has prevailed in Mobile and possibly other counties of the state, and that the officials have been misled by such custom rather than from any intentional violation of the law. The whole theory of this case is based upon the assumption that there was no mala fides on the part of any one. Everything which was done by said officials was openly done and are matters of public record.

1. A county is, in *one* sense, a corporation, and in *that* sense it has its officers or agents who, when acting within the authority conferred upon them by law, may legally bind the county. In *another* sense a county is a political subdivision of the state, created for the purpose of aiding the state in the administration of government of the state. In *this latter* sense a county is an arm of the state; its officers are public officials and are officers holding office under the laws of the state within the meaning of our Constitution; and their compensation is fixed by law. When, within the scope of their powers as fixed by statute, the county commission-

ers of a county are dealing simply with the *business* affairs of the county, such commissioners are, in fact, the *agents* of the county considered as a corporation, and they may bind the county just as the agents of any other corporation may bind the corporation of which they are the agents so long as they act within the *actual scope* of their authority. When, however, the members of the court of county commissioners of a county act in the *other and broader* field—when they leave the realm of business and are acting in their capacity as "officers holding office under the laws of this state"—their acts can confer no more rights upon persons claiming through such acts than do the acts of any other public official or set of public officials of the county or state. It may be well to bear this distinction in mind for the act of a public official, no matter what his apparent authority may be, which he is not authorized to perform, *is void,* not merely *voidable,* and confers no rights of any sort upon any one. "All who deal with officers or agents of the government must inquire at their peril into the extent of their powers."—*State ex rel. Lott v. Brewer,* 64 Ala. 287.

2. A *void* thing is *no* thing. It has *no* legal effect whatsoever, and no rights whatever can be obtained *under* it or *grow out* of it. In law it is the same thing as if the *void* thing had never existed.—Words and Phrases, vol. 8, p. 7332. It is true that a *void* deed may, in a proper case, be introduced in evidence as *color* of title to lands held adversely, but the *adverse* possession only can create the title to the land. The *void* deed is simply admissible for the purpose of showing the extent of the possession and the *character* of the adverse holding. When, however, the records of a court affirmatively show that one of its judgments is *void,* then

that judgment confers no rights upon any one and furnishes protection to no one.

3. "The law of fees and costs must be held to be penal, and no fee must be demanded or received, except in cases expressly authorized by law."—Code of 1907, § 3693.

A person claiming fees or costs must point to the definite law authorizing it; the law will not be extended beyond its letter; the law may impose duties upon public officers without providing compensation therefor. —*Pollard v. Brewer*, 59 Ala. 130; *Torbert v. Hale County*, 131 Ala. 143, 30 South. 453.

"An officer demanding fees for services rendered must point to some clear and definite provision of the statute which authorizes the demand, and the compensation *cannot* be allowed unless it is conferred by a strict construction of the language employed in the statute. * * * *Troup v. Morgan County*, 109 Ala. 162 [19 South. 503]." *Torbert v. Hale County*, 131 Ala. 143, 30 South. 453.

"Those who accept public offices which require them to render services to the state must take the office cum onere," and must render their services gratuitously, "unless, by express statutory provision, compensation is fixed and an express liability for its payment imposed."—*Pollard v. Brewer, supra.*

4. The law in this state is well settled that the court of county commissioners of a county, in auditing and allowing claims against the county, acts in an administrative capacity *only,* and that the allowance of a claim by such a court is prima facie evidence *only* of its correctness. When "a claim is allowed which is not legally and properly chargeable against the county, the commissioners' court exceeds its authority, the allowance of the claim is *void,* and the county is not estop-

ped from disputing its liability."—*Commissioners'
Court v. Moore*, 53 Ala. 25. In such a case, "if the
funds are in the treasury of the county to pay the same,
and the county treasurer should be proceeded against
for a failure to pay on demand, it would be his duty
to set up in defense the invalidity of the claim."—*Com-
missioners' Court v. Moore, supra.* "If the record
should show affirmatively that the court has allowed a
claim not legally chargeable on the county, the allow-
ance of which" is in "excess of the authority with which
the court is intrusted, the allowance would be void." It
is only "when the claim is of the character with which
the county is *by law chargeable*" that a prima facie lia-
bility can be created by the order of the court of county
commissioners.—*Jeffersonian Publishing Co. v. Hil-
liard,* 105 Ala. 576, 17 South. 112.

In cases of public officers, their fees and compensa-
tion are fixed *by law,* and, if a court of county commis-
sioners make an order allowing a public officer a fee
when he is not entitled to it, the records, out of neces-
sity, must show it. In such a case the record of the
court shows that the order is void, that the warrant
drawn pursuant thereto is void, and such an order and
such a warrant can furnish protection to no one.

When, therefore, there are, either upon the face of
the claim or upon the face of the records of the court
of county commissioners or otherwise, evidences brought
home to the county treasurer that a claim, although
allowed by the court of county commissioners, *is in
fact invalid,* then it is the *duty* of such *treasurer* to
refuse to pay such claim and to present, on behalf of
the county, the defense of such county to such claim.
If he pays such a claim he does so at his peril.

5. There appears to be no doubt about the proposi-
tion, so far as the laws of Alabama are concerned, that

when a public officer collects money from a county, as fees or compensation for services rendered by him, and to which fees or compensation he is not legally entitled, such county can maintain a suit for the recovery of the money so illegally obtained by him and recover the same. We can properly quote as applicable to the facts of the present case the following from the Supreme Court of Indiana: "The rule preventing the recovery of money voluntarily paid has no application under the facts in this case. As charged in the complaint, the claims were allowed and the money paid, without any legal authority for so doing. In view of the alleged facts, those claims were not only allowed in violation of law, but they were presented by the appellee, and the money of the county unlawfully received by him, and he is chargeable with knowledge of the illegal acts. It *was no payment by the county.* The latter, as the principal, had no part in the payment. It could not, as a public corporation, be held to the consent to the payment of, or expenditure of, the public money in defiance of law. Awarding to the appellee this money, under the alleged facts, was *in a legal sense* equivalent to an *unlawful* appropriation of the county's money to his own use by *the aid of its board of commissioners.* The allowance and payment of the money being unlawful, the commissioners did not act within the scope of their authority and therefore did not bind the county." —*Commissioners v. Heaston,* 144 Ind. 583, 41 N. E. 457, 43 N. E. 651, 55 Am. St. Rep. 192; *Board v. Ellis,* 59 N. Y. 620; *Lee v. Board, etc.,* 124 Ind. 214, 24 N. E. 986; *McElrath v. United States,* 12 Ct. Cl. 201; *American S. Co. v. Young,* 89 Pa. 186, 33 Am. Rep. 748; *Dew v. Parsons,* 2 B. & Ald. 562; *Stut v. Williams,* 8 Exch. 625; *Fire Ins. Co. v. Britton,* 8 Bosw. (N. Y.) 148; *Ogden v. Maxwell,* 8 Blatchf, 319, Fed. Cas. No. 10,458;

*Comer v. Board of Com'rs of Morgan County,* 32 Ind. App. 477, 70 N. E. 179; *State ex rel. Board of Com'rs of Tippecanoe County v. Flynn,* 161 Ind. 554, 69 N. E. 159.

6. A statute declaring for what purposes a bond shall be binding upon a public official is to be read into the bond and forms a part of it to the same extent as if set out in the bond.—*Waterman's Case,* 29 Ind. App. 344, 61 N. E. 743, 63 N. E. 42; *State v. Fletcher,* 1 Ind. App. 581, 28 N. E. 111; Brandt on Suretyship & Guaranty (3d Ed.) vol. 1, p. 227, § 105; *McElhaney v. Gilleland,* 30 Ala. 183; *Mason v. Crabtree,* 71 Ala. 479.

Section 1500 of the Code of 1907 provides, among other things, that "every official bond is obligatory on the principal and sureties thereon  *  *  *  for the use and benefit of every person who is injured, as well by any wrongful act committed" by the officer "under *color* of his office as by his failure to perform, or the improper or neglectful performance of those duties imposed by law." This section of our Code is broad, and to use the language of this court in *McElhaney v. Gilleland,* 30 Ala. 183, the object intended is to "extend the remedy beyond those cases in which a wrong is done in the discharge of the legitimate duties of the office, to those in which a wrong is done under color of office." Color of office is defined by Bouvier, in his Law Dictionary, to be where a wrong is committed by an officer "under the pretended authority of his office." The phrase "color of office" occurs in the criminal law and is defined by text-books, treating of prosecutions of officers for extortion. "Extortion, in its strict legal acceptation, signifies the taking of money by an officer, by color of his office, either where none at all is due, or not so much is due, or where it is not yet due."— 2 Chitty's Crim. Law, 293, note W; 4 Black's Com. 142.

In Webster's Dictionary color is defined to be "guise, appearance, pretense." Mr. Bishop says that extortion is committed by a public officer if he corruptly demands and receives a fee under circumstances when no fee is due. He also says that the fee must be procured by an officer under *color of his office*. See 2 Bishop on Criminal Law, §§ 393 and 395.

We take it, therefore, that when a public officer corruptly claims a fee to be due him for services rendered by him as such officer, and corruptly receives such fee when no such fee is due him or allowable to him for such services, he is guilty of extortion. The corrupt motive in receiving the fee renders the act *criminal,* but all the law on the subject of extortion, as we read it in the books, rests upon the proposition that when a public officer demands and receives a fee for services rendered by him as such public officer, whether the fee claimed be legal or illegal, he is to be *held to have done so under color of his office.* In other words, whenever a public officer claims that a fee is due him for services which he claims that he rendered as a public officer, the claim is made under *color of his office,* and, if he receives that fee, he receives it *under color of his office;* and under the statute of this state which we have above quoted there is, in legal effect, in every official bond, a stipulation on the part of the official and the sureties on his bond providing protection to every person who is injured by any wrongful act of such officer "committed under *color* of his office." If a sheriff, while sheriff, does an act as sheriff which is required by law and claims and collects a certain illegal fee for that service, with corrupt intent, he is liable for extortion because he made the claim and collected the fee *under color of his office.* If he made the claim and collected the illegal fee in good faith, acting under a mistake as to his

right, the act of making the claim and of collecting the
fee would still be an act done under *color* of his office.
The absence of the bad intent would, in the latter case,
rob the case of its criminal aspect, but only of its crimi-
nal aspect.  And so, if a judge of probate, while probate
judge, does an act·as probate judge, and claims and
collects a certain illegal fee for that service, with cor-
rupt intent, he is liable for extortion because he made
the claim and collected the fee under color of his office.
If he should make the claim and collect the illegal fee
in *good faith,* acting under a mistake as to his rights,
the act of making the claim and of collecting the fee
would still be an act done under *color* ·of his office.
The absence of the bad intent·would, in the latter case,
rob the case of its criminal aspect.  Of course, if one
who has been an officer should, after the expiration of
his term as a public official and after he had ceased
to act as such official, lay claim to a fee to which he
was not legally entitled and should collect the fee, he
could not be said to have made *that* claim and collec-
tion under color of his office, for in such a case, *when
he made* the illegal claim and collection, he held no
office which could *give color to his act.*  A county is
clearly a person within the meaning of the above- quot-
ed statute and is protected under its provisions.

In the case of *State v. Flynn,* 161 Ind. 554, 69 N. E.
159, above quoted, we find a dicta which might appear
to be opposed to the views above expressed, but in that
case the court said: "If the allowances in question
were unlawfully made by the court to him, either in
his private capacity or *under mere color of* office, then
no right to recover by the county would arise on his
official bond."  This quoted statement of the Supreme
Court of Indiana was, as applied to the facts of the
case, then under consideration, entirely gratuitous, and

can, of course, be of no service to this court on the
subject now under discussion, since the bond in this
case, by virtue of our statutes, protects the county. of
Mobile against any *wrongful* act of the probate judge
of that county "committed under color of his office."
In the above case of *State v. Flynn* the Supreme Court
of Indiana had before it a case where there was an
effort to hold a clerk of a court responsible for money
which had been paid him as compensation for work
done, not as *clerk,* but for work done by him as an indi-
vidual under *contract*—work which was not *covered*
by any of the duties which the law *required* of him as
clerk or which was within the purview of his duties
as clerk—and, of course, as the work was not within
the contemplation of his office, he was plainly not liable
on his official bond because the work done by him was
not work covered by any of his official duties or within
the *contemplation* of his bond, but was work which he
had done under special contract with the county made
by him, not as clerk, but as an individual, and which
contract the county was lawfully entitled to make.

*Wrongful* means "an invasion of right, to the damage
of the party who suffered it. It consists in the injury
done, and not *commonly* in the *purpose* or *mental* or
*physical* capacity of the person or agent doing it. It
may or may not have been done with bad motives. The
question of *motive* is usually a question of aggravation
*only.*"—8 Words & Phrases, p. 7547; *Spivey v. Mc-
Gehee,* 21 Ala. 417. Public office is a public trust, and
whenever a public officer, under color of his office, does
an act without legal right, and the act results in injury
to another, that act is wrongful.

7. The general facts in this case, as we gather them
from the pleadings, are as follows: Price Williams, Jr.,
is the probate judge of Mobile county. He presented a

bill to the court of county commissioners of said county, in which he claimed that the county owed him for the following sums of money:

| | |
|---|---|
| For telephone | $ 135 00 |
| Signing and sealing county bonds | 343 00 |
| City directories | 15 00 |
| Lunacy cases | 2,859 75 |
| Indexing minutes of board of revenue | 573 99 |

The court of county commissioners, acting under subdivision 3 of section 3313 of the Code, which provides that the court of county commissioners shall have authority to "examine, settle, and allow all accounts and claims chargeable against the county," allowed the claim and the same was paid. This suit was brought by the county of Mobile against Price Williams, Jr., and the sureties upon his official bond, as probate judge of the county, for the recovery of the money paid to him, as above stated, upon the ground that the claim was illegal and its payment without warrant of law.

8. There were a number of pleas to the complaint, but pleas 4 and 5 are the only pleas which present any questions for our consideration. From what we have above said, it is evident that we are of the opinion that the demurrer to plea 5 should have been sustained. Plea 4 admits that the claims presented to the court of county commissioners by Judge Williams were for amounts which he claimed to be due him for services rendered by him in his official capacity as probate judge of Mobile county; and, taking the plea most strongly against the pleader, the plea admits that Judge Williams was not entitled to any compensation under the law for the services so performed. It is conceded in brief of appellee, as we understand the brief, that, un-

der the averments of the plea, the fees so collected "were illegal and unauthorized." Plea 4 undertakes to defeat this action of the county because after an examiner of public accounts had made an examination of the office, and the fact that said fees had been illegally demanded and allowed was called to public attention, the court of county commissioners, upon a proceeding had for the purpose, made a compromise of the claim. The court of county commissioners undertook to make said compromise under the authority conferred on them by subdivision 11 of section 3313 of the Code of 1907, and which authorizes such courts "to compromise on such terms as they *may deem just* all *doubtful* claims in favor of the counties, when such claims arise on account of moneys heretofore paid, *in good faith,* by order of such courts." The court of county commissioners have no right to compromise, under the authority conferred by the above section, any claim in favor of the county, except such claims as were in *existence* when on August 26, 1909, the Code of 1907 was adopted, and then *only* such claims as are doubtful and which were paid *in good faith,* by order of the court of county commissioners. The words "doubtful" and "good faith," used in the above subdivision, are *jurisdictional,* and, unless the claim is of *doubtful* validity and the money was paid in *good faith* by order of the court, then the members of the court of county commissioners, acting in said matter, are without authority to act, and if, under such circumstances, they do act and compromise such a claim, then such compromise is void and not binding on the county.—*Commissioners v. Moore, supra.*

The payment of county funds to an officer for services rendered by him as such officer under the requirements of the law, and for which services the law allows him no compensation, is not only without *consideration* but

is an illegal act. Such a payment is not to be construed as the payment of a claim against the county in its corporate capacity, within the meaning of subdivision 3 of said section 3313, but, as we have already said, as the payment, illegally and without warrant of law, to a public officer of public money belonging to the county in its political capacity as an arm of the state. The law prohibits an officer from receiving such compensation, and, if he does so with a corrupt intent, he is guilty of a criminal offense. If he does so without corrupt intent and in ignorance of the law, then under the laws of this state, the act is not criminal but is nevertheless illegal. He is, in a *civil* proceeding brought against him for the recovery of such money by the state or county, *conclusively* presumed to know the law and to have known the law when he presented his claim and received the money. He will not, in such a proceeding, be permitted to set up his own *wrong* and to show that the officer who delivered the money to him did so in good faith. He will not be permitted to show that *another* officer was *innocently* misled by him to prevent a recovery of money which he, by his illegal act, done under color of his office, has thereby been enabled to obtain out of the public funds. He is not in a position to invoke the healing effects of the statute which, in this case, is relied upon as conferring authority upon the court of county commissioners to compromise this claim. The legal effect of this transaction, construing plea 4 most strongly against the pleader, was, so far as the appellee is concerned, that appellee, under color of his office, obtained money out of the county treasury, to which he had no legal claim, illegally and without consideration and without the knowledge or consent of the county. The commissioners' court, having no authority to act in the premises, were not only unable to

give the consent of the county, but their knowledge did not constitute knowledge to the county. The legal effect of the transaction, in so far as the commissioners' court is concerned, was that the members of the commissioners' court, acting as public officials, without authority, *donated* a part of the public funds of the county to a purpose to which, under the law, that court was without authority to donate such funds. While the claim of appellee and the act of the commissioners' court may not have been mala fides, neither appellee nor the commissioners' court, in this civil proceeding, can be permitted to invoke their ignorance of the law and the fact that they acted in good faith as a justification of their acts. The *treasurer* who paid out the money upon the faith of the order of the court of county commissioners may possibly occupy, in this matter, however, a different position. If, in good faith, *he paid out the money,* he may possibly be in a position to invoke the powers of the commissioners' court to compromise the claim of the county against him. He has not *received* any money to which he is not legally entitled. He has, acting in good faith, probably paid out, upon a void order of the court of county commissioners, money which he should have retained in his possession. If so, he may possibly be in a position to invoke the aid of the statute. That question, however, is not before us, and we do not determine it.

Public office, is, as we have already said, a public trust. A public office is created, not for the benefit of the incumbent of the office, but for the benefit of the people whom the incumbent of the office serves. A public officer, as we have already said, accepts his office with all of the burdens which the law imposes upon the incumbent of that office. He knows, when he accepts the office, what its perquisites are, and he must, with

diligence, perform *all* of the duties of the office for the fees which the law attaches to the office. If the law imposes upon the incumbent of an office duties for which it provides no fees or other compensation, he must perform those duties, and for performing them he can neither demand nor receive any compensation whatever. When, therefore, the appellee presented under color of his office claims against the county which, under the law, he had no right, as such officer, to charge against the county, he made an illegal claim against the county. When the court of county commissioners made the order that the treasurer pay those claims, that court made an *illegal* and a *void* order. When appellee presented those claims to the county treasurer for payment, he presented and demanded the payment of *void* and *illegal* claims, and, when those claims were paid, appellee received money to which he had no legal, valid, or just claim. This was, in a legal sense, a misappropriation by the appellee, through the court of commissioners of the county, of the public funds of the county. "It was *no payment* by the county. The latter, as the principal, had no part in the payment. It could not, as a public corporation, be held to consent to the payment of, or expenditure of, the public money, in defiance of law. Awarding to the appellee this money, under the alleged facts, was, *in a legal sense,* equivalent to an *unlawful* appropriation of the county's money to his own use by the aid of its board of county commissioners."—*Commissioners v. Heaston, supra.* The records of the court of county commissioners necessarily show upon their face that the orders under discussion were coram non judice and void; but it may be that the treasurer of the county, without inspecting the records but acting in good faith with reference to said orders, and assuming that those whose orders he had

[Mobile County v. Williams, Judge.]

been accustomed to obey had not acted beyond their powers, paid the claims. If such be the case, then the treasurer may possibly be in a position, *as* before said, if a suit had been brought against him, to invoke the authority conferred upon the court of county commissioners by the above statute; but, as already said, we are of the opinion that the appellee in this case certainly does not occupy that vantage ground, and we are therefore of the opinion that the demurrer to plea 4 should have been sustained.

9. The law is and should be extremely careful, watchful, and exacting of public officers when they, under the color of their offices, are dealing with each other with reference to the public funds. There are, of course, many duties resting upon the members of the court of county commissioners, with reference to the property and affairs of the county, which the law has committed to their care. The law has not, and in the nature of things cannot enumerate every claim which, in administering the affairs of the county, they may lawfully create against the county. *It has said that some things they shall not do and as to those things they have no power to act.* If, in their management of the business affairs of the county, they should make a contract or do some act *not prohibited,* and the county should receive the benefit thereof, and it was afterwards discovered that they had exceeded their powers as the agents of the county in the matter, then if, under the orders of the commissioners, a claim, arising under such circumstances, had been paid in good faith out of the treasury, and the county should threaten suit for the recovery of the money so paid, the court of county commissioners might, under the above statute, compromise and settle such claim. In other words, the statute has a useful field of operation without extending its terms to a *pub-*

*lic officer* who, under the color of his office, has, through the court of county commissioners, obtained money to which he had no legal claim.—*Jack v. Moore*, 66 Ala. 184.

10. There are decisions of some of the courts of last resort of some of our sister states which are opposed to some of the above views.—*Furlong v. State*, 58 Miss. 717; *Jennings, Governor, v. Bobe, etc.*, 51 Fla. 229, 40 South. 194, 120 Am. St. Rep. 156. The opinions in both of these cases show that in Mississippi and Florida, when these decisions were rendered, there were no statutes providing that official bonds should protect persons or counties against the wrongs of an officer done *under color* of his office as is the case in Alabama, but that such bonds only protected against wrongs suffered through the *official* acts of such officers.

In addition to the above, the states of Alabama and Indiana, along with many of the other states, are committed to the doctrine that a court of county commissioners, in auditing and allowing claims against the county, act in an administrative capacity. See *Commissioners v. Heaston*, note 55 Am. St. Rep. on pages 203 to 209. The states of Mississippi, New York, California, and Nevada, along with some of the other states, are committed to the view that they act in such matters as judicial officers. Some of the other states hold that they act in a legislative capacity.—*Commissioners v. Heaston*, 56 Am. St. Rep., note, supra. To the divergence of opinion among the courts of last resort of the various states as to *how* a court of county commissioners, in auditing claims, is to be held to act, whether in an administrative, judicial, or legislative capacity, is to be attributed many of the conflicts which exist among such courts upon some of the questions above discussed.

11. In the above discussion we have taken the allega-

tions of the appellees' pleas as they should on demurrer be taken; i. e., most strongly against the pleader. We have devoted to this case much time and attention and have undertaken to express our views of the law of the case as we find it to exist. We have construed subdivision 11 of section 3313 of the Code in the only reasonable way in which, in harmony with the previous decisions of this court, it can be construed. To place the construction upon it contended for by appellee would be, to use almost the very words of a distinguished judge who was discussing a question somewhat similar to the one now under consideration, to pave the way by which it would be easy for a public officer, under the guise of a legal claimant against a county, through the aid of its commissioners, if the latter were inclined to close their eyes to legal prohibitions, to unlawfully obtain and appropriate to his own use the public money, and, when called upon in a court of justice to account for the same, deny the right of the county's recovery upon the ground that he had made a compromise with the commissioners who had, by their own illegal act, enabled him to obtain the money. We cannot believe that it was the purpose of the Legislature to thus allow public officials to thus condone their own illegal acts; and this statute must be construed according to the legislative purpose. It seems to us, therefore, that the trial court erred in overruling the plaintiff's demurrer to the defendant's plea 5, as above stated.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting, and MAYFIELD, J., dissenting.

ON APPLICATION FOR REHEARING.

DE GRAFFENRIED, J.—Sections 1500 and 5415 of the Code of 1907 have appeared in our various Codes since their first appearance together in the Code of 1852. Section 5452 of the Code expressly renders the judge of probate liable on his official bond for certain *named* omissions of *official* duty, as well as for *all* omissions of *official* duty. This section seems to deal only with the liability of a judge of probate on his bond for a *failure* of such judge to perform his *official* duty. It deals with acts of *omission only,* and says who may sue therefor.

Section 1500 of the Code deals with the *legal* effect of *every* official bond, and declares that "every such bond shall be obligatory upon the principal and sureties for the use and benefit of every person who is *injured,* as well by any *wrongful* act *committed* under color of office as by his failure to perform or the *improper* or *neglectful* performance of those duties imposed by law." This section covers *all* official bonds, and has therefore been uniformly construed by this court as covering the bonds of judges of probate as well as those of all other officers.—*Savage v. Mathews,* 98 Ala. 535, 13 South. 328; *Tallman v. Drake,* 116 Ala. 262, 22 South. 485.

In the above-named case of *Savage v. Mathews,* this court declared that "the wrongful issuance of a county warrant by the judge of probate is done *under color of his office,* within the meaning of subdivision 3 of section 273 of the Code" of 1886 (now section 1500 of the Code of 1907), "upon which an action would lie upon his official bond at the suit of the county, if thereby the funds of the county were unlawfully diverted or lost." While this construction of the statute may not

have been necessary to a determination of the question involved in the above case, nevertheless the statute has been brought forward unchanged into the Codes of 1896 and 1907 with *that* construction resting upon it, and it is a settled rule of construction of statutes that, when a statute which has received a fixed judicial construction is re-enacted by the Legislature without substantial change, then the re-enactment of the statute is a legislative adoption of that construction.—*Wood-Dickerson Co. v. Cociola,* 153 Ala. 555, 45 South. 192.

The application for a rehearing is overruled.

MAYFIELD, J.—(dissenting).—To say that the commissioners' court, the sole and only quasi sovereign power of the county, and the sole representative of the county entity, in the absence of fraud or bad faith, cannot compromise and settle claims or demands due to or from the county under our laws, constitutional and statutory, is in my judgment erroneous.

If the record in this case showed that the transaction between the defendant, Williams, and the board of commissioners was a fraud upon the county, I could and would readily agree that the decision is correct. No person or officer will or should be allowed by the courts to profit by his own wrong. If the decision was placed upon the ground that the Legislature had no power to authorize a man to be a judge in his own case, and it appeared that the defendant had so acted, I could readily agree; but no such case is presented by this record, and the opinion itself precludes any such idea. The opening sentence of the opinion is as follows: "We do not, of course, ascribe bad faith to any of the officers of the county of Mobile in this discussion of the legal questions which are presented by this record. On the contrary, we are satisfied that the transaction was had

without bad faith on the part of any of said officers. We think it probable that the transactions set up by the pleadings grew out of a custom which has prevailed in Mobile and possibly other counties of the state, and that the officials have been misled by such custom rather than from any intentional violation of the law. The whole theory of this case is based upon the assumption that there was no mala fides on the part of any one. Everything which was done by said officials was openly done and are matters of public record." If this be correct (and I think it is), how can it be that plea 4 is not a good defense under subdivision 11 of section 3313 of the Code and section 100 of the Constitution? As this appeal is on the record proper, let us see what the record has to say as to good faith. The complaint does not attempt to show what the claim or demand is, or what it is for, further than to allege that the defendant, Williams, as probate judge, received the amount sued for, to the use of the county, and had failed after demand, to pay it over. There is here no attempt to show either good or bad faith in receiving or in failing to pay over. The plea alleges that the claim sued upon was for typewriters and telephones furnished to the office of the probate judge, and for services rendered the county by the said Williams, etc.; whether as probate judge or otherwise does not clearly appear.

The minutes of the commissioners' court as to the first action on these claims are not shown by this record further than that they were presented and allowed; but, as to the subsequent actions of the commissioners, the following, among others, is shown: "Upon full consideration of the matter this board is of the opinion that the aforesaid claim of the county against the said probate judge is doubtful, and that the terms of com-

promise and settlement offered by the said probate
judge are just and fair; the board itself knowing that
all of said claims are for moneys paid under its orders
in good faith to the said probate judge.    Therefore,
*   *   *   it is further ordered, adjudged, and decreed
by this board that the said probate judge be, and he
hereby is, by virtue of the aforesaid compromise releas-
ed, discharged and acquitted of and from each and all
of the aforesaid charges, claims, and demands on the
part of the county of Mobile against him."

Plea 4 sets up the exact state of facts necessary to
bring the transaction within the influence of subdivis-
ion 11 of section 3313, which reads as follows: "To
compromise on such terms as they may deem just, all
doubtful claims in favor of the counties, when such
claims arise on account of moneys heretofore paid in
good faith, by order of such courts"—and then alleges
that the claim here sued upon was so compromised and
adjusted.

The opinion says the statute did not cover the case
made by the record.  If not, why not?  The plea, the
statute, and the Constitution use the same language,
and for this reason I cannot understand why the de-
fense made by the plea is not within the protection of
the statute.  The facts stated in the plea may not be
true, but that question cannot be tested by a demurrer,
and that is the only mode in which there has been any
attempt, so far, to test the truth thereof.  If the facts
stated in this plea are true, I submit that it is a perfect
defense to this complaint.  The object and effect of the
allowance of the claims by the commissioners' court is
correctly stated by this court in *Moore's Case,* 53 Ala.
25, which is relied upon in the decision of this case.  It
is, however, decided in that case that the allowance
primarily fixes a liability upon the county, and that the

burden of impeaching the allowance rests upon the county.

Plea 4, however, does not rely on the allowance as a defense. It concedes that the allowance was not final or conclusive, but says that instead of the county suing on it, he undertook to compromise the matter with the county, as the statute authorizes, and that the claim was thus fairly compounded and settled, and that he performed his part of the settlement by paying what, and in the manner, the county agreed to accept, and that he was thereby released; and he sets up the county's own record as showing the facts. In the absence of fraud or bad faith, why this is not binding is more than I can understand. Will the county be allowed to accept the plaintiff's money or rights and extinguish his claim against it, and still sue and recover as if there had never been a settlement? The effect of this settlement does not at all depend upon whether the claims originally allowed were proper or improper. If they were proper, then there was no need of any settlement, and, so far as Williams was concerned, there was no error to correct, nor wrong to arbitrate or right, and the county thus received the defendant's money and canceled his void claim for which the latter received no consideration whatever. It was only in the event that there was error, mistake, or fraud in the allowance in favor of Williams and against the county that there could be any use or sense in a settlement of the differences between them.

This record fails to show,. except in the most general way, what was the nature of the original claims. All that is attempted to be shown is the account made out by one of the examiners of public accounts against the defendant, Williams. It is in words and figures as follows:

[Mobile County v. Williams, Judge.]

| Character of Item. | Principal. | Interest. |
|---|---|---|
| Typewriters | $ 929 26 | $ 227 49 |
| Telephones | 135 00 | 18 50 |
| Signing and sealing county bonds... | 343 00 | 123 75 |
| City directories | 15 00 | 4 25 |
| Lunacy cases | 2,859 75 | 825 00 |
| Clerical services tax commissioner's raises | 4,680 50 | 789 50 |
| Indexing minutes of board of revenue | 573 99 | 158 01 |
| Total | $9,536 50 | $2,146 50 |
| Total principal and interest | $11,683 00 | |

The largest of these items, to wit, $4,680.50, and the third to the largest, $929.26, were subsequently held by the Attorney General to be improper charges against the defendant, or, in other words, that they were originally properly allowed him by the commissioners' court. Whether all these amounts were allowed at one time or at different times, and whether all were embraced in one claim or were made up of sundry items for different services, this record does not attempt to inform us. I do not see how this court on this record can say that all of these claims, or all of the claims that were due, were not and could not be made proper charges against the county. As to whether or not this claim or any part of it was doubtful, if that question could be considered on this appeal, surely there was some doubt as to some of the items, especially those large amounts for interest for years before any demand was made. The complaint conclusively shows that the county in this suit does not now claim interest until after demand; yet of this claim which was compromised a large amount was for interest.

So far as plea 5 is concerned, I fully concur in all that is said in the opinion and think it a complete answer to the contention of the appellee and shows that the ruling of the trial court was erroneous as to this plea. But there is no ground of demurrer pointing out any such defect in plea 4, and nothing contained in the opinion, in my judgment, which shows this plea to be insufficient. It does not attempt to set up the allowance of an improper claim as a defense to the action as does plea 5; all that is said in that plea as to the original allowance is mere inducement or basis for the compromise and settlement which is relied upon as a defense.

The original allowance of an improper claim against the county and the settlement of one due it are separate and distinct functions, though they pertain to the same matter, and the power to make, and the effect of, when made, are entirely different. Whether the county will collect what is due it, by suit or by compromise or by arbitration, is a matter which the law places within the sound discretion of the commissioners.

I submit that there is no power in this state to make a county sue for the full amount which an examiner may think is due the county, or that should prevent the commissioners from compromising or arbitrarily settling any claim without suit, if they act in perfect good faith. Of course they cannot legally use their power and authority for the purpose of defrauding the county, nor for conferring favors upon themselves or their friends. They must in good faith act for the good of the county; and, if they do this and merely err in judgment or discretion, this does not destroy or invalidate settlements or arbitrations made by them in good faith.

The county is bringing this suit for the county just as much so as it was the proceedings in the lower court,

[Mobile County v. Williams, Judge.]

except that the commissioners are not now the ones to decide as they were in the commissioners' court. They may employ counsel to bring and conduct suits and, of course, in the absence of express statutes providing for particular cases or localities, may direct and control the counsel they employ. They, acting for the county, may agree with the adverse party as to the conduct of the suit, as to judgments by agreement, etc., and, in the absence of bad faith, there can certainly be no valid objection to their so doing. If they have this power, right, and discretion as to the bringing of the suit and as to the conduct of it after it is brought, why have they not the right, the power, and the duty to compromise claims and demands for and against the county, to avoid suits, if they do it in good faith, as this record and the majority opinion have stated was done in the case at bar? Why should commissioners spend $100 in collecting a $100 claim when they could settle the matter by compromise, without cost, for something less, if in their judgment and in good faith they thought best to do so?

Litigation is expensive to him who wins, and experience in law, if not the science of it, teaches that any litigant is liable to lose, no matter how just or righteous his claim. The law, both divine and human, constitutional, statutory, and common, encourages arbitration, compromise, and settlement of differences without going to law. This rule of morals and of law is applicable to counties and to other corporations or persons; and if it is to be followed, as to counties, the law has imposed the duty and conferred the authority and power solely upon the commissioners to follow the precept and enforce the rule. The record in this case shows that this has been done by these commissioners, and I think their action ought to stand until it is set aside for fraud

or sufficient cause. The mere fact that it may subsequently appear that they acted unwisely and erred in judgment, but not in faith, is no ground to disregard their settlement and release, such as shown by this record.

It is matter of common knowledge that the Legislature has often released persons and corporations from their valid obligations to the state, whether due in money, or in other property, or in services; and because this power was frequently abused by the officers or functions of government in which the power was reposed, and to curb, restrain, and, in some instances, to prohibit, its exercise, the Constitution contains a limitation upon this particular power of the Legislature. Section 100 of the Constitution provides as follows: "No obligation or liability of any person, association or corporation held or owned by this state, or by any, county or other municipality thereof, shall ever be remitted, released or postponed, or in any way diminished, by the Legislature, nor shall such liability or obligation be extinguished except by payment thereof; nor shall such liability, or obligation be exchanged or transferred except upon payment of its face value: Provided, that this section shall not prevent the Legislature from providing by general law for the compromise of doubtful claims." This section of the Constitution clearly called for subdivision 11 of section 3313, and probably other similar sections of the Code, in order to do exactly what the Constitution says may be done, to provide a general law "for the compromise of doubtful claims." This statute certainly did not violate the Constitution, because the Constitution expressly provides for just such a law. The statute was clearly intended to comply, and I think unquestionably complies with this provision of the Constitution. There

can be no doubt that the commissioners and the defendant, Williams, attempted to comply with and obey the Constitution and the statute. The claims were certainly those due the county, and whether they were doubtful or not is a question of fact and not of law. The commissioners were the persons in whom the law invested the power and upon whom it imposed the duty of ascertaining that fact; and they did so ascertain it and put it of record, and the record must be conclusive, in the absence of actual fraud. Fraud, of course, vitiates everything into which it enters, even the most solemn judgments; but the law does not regard all acts of officers as fraudulent, but on the other hand it indulges the presumption that they are honest and properly discharge their duties; and, before the courts will pronounce such acts to be a fraud, the fact must be specifically alleged and proven as alleged.

There is no attempt to allege fraud in this case on the part of the plaintiff or of the defendant, and, as before stated, the opinion concedes there is none. I know my Brothers do not think so and have not intended to so decide, but in my judgment they have virtually repealed the statute. I know they have attempted to save the statute by saying it does not apply to certain officers or to certain claims, but may apply to others, but this, I submit, is not a warranted interpretation to put upon this statute or the constitutional provision which called it forth. Why should one officer's claim be compromised any more than that of another, or why should any officer's claim not be compromised as well as the claims of other citienzs? I can find no intimation in the law that any such discrimination was attempted. Of course the probate judge could not act as a member of the board in allowing or compromising his claim; but it does not follow that the other members

cannot thus pass upon his personal or official matters.

I think my Brothers have erred in concluding that the claim compromised in this case was not a doubtful one within the meaning of the Constitution and the statute. It affirmatively appears that the Attorney General of the state held that a part of it was not a valid claim against the defendant or in favor of the county; and certainly the large amount of interest with which he was charged by the examiner was not a proper charge, and that is abandoned in this suit; but it was embraced in the claim which was compromised, so there was certainly a doubt as to the validity of a part of the claim, a doubt even as to the liability of the defendant; but I submit that is not the only element of doubt which a claim may possess. There is another element of doubt, and that is as to the ability and costs of realizing anything by suit or summary proceeding or other legal process. It may be that the debtor or his sureties, one or both, are insolvent or have disposed of their property in such manner that the cost of ultimately realizing anything on the claim may exceed the claim. It is certainly a question of some doubt as to whether this claim was a valid one in toto against the sureties on the official bond of Williams. While it may be said that this is a question of law, and not of fact, yet the law is not such a science as that there is and can be no doubt about it. One has but to try to learn, practice, write, or obey it to find out that there is frequently as much doubt about it as there is in many questions of fact. While it is often said that every one is presumed to know the law, and that ignorance thereof excuses no one, this rule or maxim is frequently misconstrued and misapplied, as I think my Brothers have unconsciously done in this case.

It was said by Beasley, C. J., in *State v. Cutter*, 36 N. J. Law, 125, 127: "This rule in its application to

[Mobile County v. Williams, Judge.]

the law of crimes is subject, as it is sometimes in respect to civil rights, to certain important exceptions. Where the act done is malum in se, or where the law which has been infringed was settled and plain, the maxim, in its rigor, will be applied; but where the law is not settled or is obscure, and where the guilty intention, being a necessary constituent of the particular offense, is dependent on a knowledge of the law, this rule, if enforced, would be misapplied. To give it any force in such instances would be to turn it aside from its rational and original purpose and to convert it into an instrument of injustice. The judgments of the courts have confined it to its proper sphere."

The Supreme Court of Michigan has thus explained the maxim and rule under decision: No man can avoid a liability, as a general thing, because he is ignorant of the law. This is an essential rule of society. But the law is not so senseless as to make absurd presumption of fact. In *Regina v. Tewkesbury*, L. R., 3 Q. B. 628, this supposed maxim was clearly explained, and it was held that where an actual knowledge was in question the legal presumption could not supply it. Blackburn, J., uses this language: "From the knowledge of the fact that Blizard was mayor and returning officer, was every elector bound to know, as matter of law, that he was disqualified? I agree that ignorance of the law does not excuse. But I think that in *Martindale v. Falkner*, 2 C. B. 719, Maule, J., correctly explains the rule of the law. He says: 'There is no presumption in this country that every person knows the law; it would be contrary to common sense and reason, if it were so.' In *Jones v. Randall*, Cowp. 38-40, Dunning, arguendo, says: 'The laws of this country are clear, evident, and certain; all the judges know the laws, and, knowing them, administer justice with uprightness and integrity.' But Lord Mansfield, in delivering the judgment of the court,

says: 'As to the certainty of the law mentioned by Mr. Dunning, it would be very hard upon the profession if the law was so certain that everybody knew it; the misfortune is that it is so uncertain that it costs much money to know what it is, even in the last resort.' It was a necessary ground of the decision in that case that a party may be ignorant of the law. The rule is that ignorance of the law will not excuse a man or relieve him from the consequences of a crime or from liability upon a contract. There are many cases where the giving up a doubtful point of law has been held to be a good consideration for a promise to pay money."— *Black v. Ward*, 27 Mich. 200-201, 15 Am. Rep. 162.

Let us apply this rule to this case: The Attorney General and the Examiner of Public Accounts, two officers, differed as to the amount of this claim, and the county commissioners and the examiners differed from both the other officers as to the validity vel non of the claim. The attorney for the county and the commissioners differed, and the attorney for the county differed from the Attorney General, and the Examiner of Public Accounts as to the interest, and the trial court and this court evidently differ as to the validity and the amount of the claim, and the judges of this court differ as to the matter, though only one from the other six. Is all this not sufficient to justify the commissioners in claiming and treating this claim as a doubtful one, and in exercising the power conferred and discharging the duty imposed, by the statute, in settling this claim? It does seem to me that there could be no *doubt* that there was involved in this matter such a "doubt" as was referred to in the Constitution and in the statute above alluded to.

I think that the case should be reversed as to plea 5, but, as to plea 4 I am "beyond doubt" in my mind, there was no error.